UNITED STATES, Appellant

v.

Ray A. VAZQUEZ, Staff Sergeant
U.S. Air Force, Appellee

No. 12-5002

Crim. App. No. 37563

United States Court of Appeals for the Armed Forces

Argued October 24, 2012

Decided March 4, 2013

RYAN, J., delivered the opinion of the Court, in which ERDMANN, J., and EFFRON, S.J., joined. BAKER, C.J., and STUCKY, J., each filed separate opinions concurring in the result.


Counsel

For Appellant:  Captain Tyson D. Kindness (argued); Colonel Don M. Christensen, Lieutenant Colonel Linell A. Letendre, Major Scott C. Jansen, Gerald R. Bruce, Esq. (on brief).

For Appellee:  William E. Cassara, Esq. (argued); Captain Nathan A. White (on brief).

Military Judge:  Mark L. Allred


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Vazquez, 12-5002/AF

Judge RYAN delivered the opinion of the Court.

Contrary to his pleas, a panel of officer members sitting as a general court-martial convicted Appellee of one specification of aggravated sexual contact with a child under the age of 12, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006).  The adjudged and approved sentence provided for a dishonorable discharge, confinement for eight years, forfeitures of all pay and allowances, reduction to Airman Basic, and a reprimand.

On March 19, 2012, the United States Air Force Court of Criminal Appeals (AFCCA) held that the application of Rule for Courts-Martial (R.C.M.) 805(d)(1) to Appellee's case violated his "right to military due process . . . , resulting in a fundamentally unfair trial."  United States v. Vazquez, No. ACM 37563, slip op. at 3 (A.F. Ct. Crim. App. Mar. 19, 2012), superseded by United States v. Vazquez, 71 M.J. 543, 544 (A.F. Ct. Crim. App. 2012).  Concluding that the error was structural, the AFCCA set aside the findings and sentence and dismissed the charge against Appellee.  Id. at 14.  On April 27, 2012, the AFCCA denied the Government's Motion for Reconsideration En Banc, but granted its Motion for Reconsideration before the original panel.  United States v. Vazquez, No. ACM 37563 (A.F. Ct. Crim. App. Apr. 27, 2012) (order granting review).  After reconsideration, the AFCCA released an amended decision in which

2

it explained that it did not base its holding on a structural error analysis, but nonetheless continued to find Appellee's denial of military due process per se prejudicial without conducting plain error analysis. Vazquez, 71 M.J. at 552. On certification under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2006), the Judge Advocate General of the Air Force asked this Court to consider the following questions:

I. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY HOLDING THAT APPELLEE WAS NOT AFFORDED A FUNDAMENTALLY FAIR TRIAL, AS GUARANTEED BY MILITARY DUE PROCESS AND THE UCMJ, WHEN TWO REPLACEMENT COURT MEMBERS DETAILED AFTER TRIAL ON THE MERITS HAD BEGUN WERE PRESENTED RECORDED EVIDENCE PREVIOUSLY INTRODUCED BEFORE THE MEMBERS OF THE COURT IN COMPLIANCE WITH ARTICLE 29, UCMJ, AND R.C.M. 805(d)(1);

II. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY FAILING TO FIND WAIVER OR BY FAILING TO CONDUCT A PLAIN ERROR ANALYSIS; INSTEAD, THE COURT INCONGRUOUSLY FOUND THE ALLEGED VIOLATION OF APPELLEE'S RIGHT TO MILITARY DUE PROCESS WAS PER SE PREJUDICIAL DESPITE DECLARING THAT THE ERROR WAS NOT STRUCTURAL.

Appellee has not shown that the application of Article 29(b), UCMJ, 10 U.S.C. § 829(b) (2006), and R.C.M. 805(d)(1) was unconstitutional as applied to him, and the military judge's decision to proceed in accordance with the procedure set out by Congress in Article 29(b), UCMJ, was not an abuse of discretion. Accordingly, the AFCCA's decision is reversed.

3

## I.  FACTS

On September 19, 2008, Petty Officer Second Class UG (PO2 UG), Appellee's friend and former roommate, brought his stepdaughter (AM) to Appellee's house to visit.  On September 28, 2008, AM told her mother, Staff Sergeant DG (SSgt DG), that while she was at Appellee's house, Appellee made her lick his body.  SSgt DG reported the allegation, which was investigated by the Air Force Office of Special Investigations.

Appellee elected to be tried by a panel of officer members. At the start of trial, the panel consisted of five members. After the Government's opening statement, the panel heard testimony from five Government witnesses -- AM, PO2 UG, Dr. Hollander, Special Agent Ferguson, and Dr. Benedek.[1]  Prior to the testimony of SSgt DG, the Government's last witness, Lieutenant (Lt.) Conn, a panel member, informed the military judge that he recognized SSgt DG after seeing her in the witness waiting area.  Lt. Conn explained that he was a squadron section commander and rates on SSgt DG's boss for performance reporting purposes.  When Lt. Conn revealed his professional association with SSgt DG, the military judge and defense counsel conducted voir dire, after which the military judge asked if defense

---

[1] AM testified remotely via live closed-circuit television pursuant to R.C.M. 914A and Military Rule of Evidence (M.R.E.) 611(d)(3).

4

counsel wished to challenge Lt. Conn for cause.  At that point, the court-martial panel consisted of five members, and the military judge reminded defense counsel that the decision to challenge the member for cause involved "a lot [of] tactical things" because, although the military judge found no evidence of actual bias, he was willing to grant a defense challenge to Lt. Conn for implied bias under the liberal grant mandate. Defense counsel asked for, and received, a recess to confer with Appellee before the military judge ruled on the challenge. After a one-hour break, defense counsel stated that the defense wished to maintain the challenge.  The military judge sustained defense counsel's challenge for cause and removed Lt. Conn from the panel.

Because the remaining four members did not constitute a quorum under Article 16, UCMJ, 10 U.S.C. § 816 (2006), the convening authority detailed five new officers, two of whom were selected to join the panel.  After the convening authority detailed the new members, the military judge asked defense counsel if there was "any issue an objection [sic] or any issue with regards to the appointment of these members?"  Defense counsel answered "No, Sir."

Defense counsel participated in a discussion off the record as to how the trial record would be presented to the new members.  When asked if there was any objection, defense counsel

declined to object and did not request that any of the witnesses be recalled.  Pursuant to the procedure set out in Article 29(b), UCMJ, and R.C.M. 805(d)(1), the military judge had a verbatim transcript prepared, allowed counsel to give opening statements, and then had counsel read the transcripts of testimony of the Government's first five witnesses to the newly added members.  Throughout this process, the four original panel members were absent.

Subsequently, all six panel members heard testimony from SSgt DG, the prosecution's last witness.  The panel then heard defense counsel's opening statement and the testimony from Appellee and other defense witnesses.

## II.  AFCCA DECISION

Raising the issue sua sponte, in its original opinion the AFCCA held that the military judge's application of the procedure set forth in R.C.M. 805(d)(1) to Appellee's case, rather than declaring a mistrial, was error.  Vazquez, No. ACM 37563, slip op. at 14.  Specifically, the AFCCA concluded that allowing new members to join the panel after five of the six Government witnesses had testified, and reading a verbatim transcript of that testimony to the newly added members, in lieu of hearing live testimony, violated Appellee's rights to confrontation, a properly instructed jury, and an impartial panel.  Id. at 6-11.  The AFCCA further held that defense

6

counsel's failure to object to this process at trial did not waive Appellee's constitutional claim of error, id. at 11-12, and that:

> As applied in this case, RCM 805(d)(1) resulted in a structural error in the trial mechanism such that the "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." Arizona v. Fulminante, 499 U.S. 279, 310 (1991) (quoting Rose v. Clark, 478 U.S. 570, 577-78 (1986)). For the reasons discussed, we find the appellant was not afforded the due process protections guaranteed by Congress.

Id. at 14.

The AFCCA deleted the above paragraph in its second amended opinion, but nonetheless deemed the application of R.C.M. 805(d)(1) a "violation of . . . [A]ppellant's military due process rights" and per se prejudicial without conducting plain error analysis. Vazquez, 71 M.J. at 552. The AFCCA further concluded that the military judge "should have recognized that application of R.C.M. 805(d)(1) would result in a patently unfair trial and would not 'preserve the ends of public justice,'" and that he had a sua sponte duty to declare a mistrial. Id. at 551-52.

### III. DISCUSSION

The AFCCA was required, given the absence of any objection at trial, to conduct plain error analysis and identify the specific prejudice to a substantial right of Appellee. Its determination that reversal was required because "military due

process" was violated, without more, was, quite simply, incorrect. Moreover, given that Appellee fails to establish that the procedures Congress determined were appropriate when a court-martial drops below quorum mid-trial in Article 29(b), UCMJ, are unconstitutional as applied to him, the military judge did not err, let alone abuse his discretion, in following those procedures in this case.

A.

As was his right, Appellee chose to challenge a member for cause, knowing it would drop the panel below quorum. Rather than request a mistrial or any other alternative, trial defense counsel affirmatively stated that they had no objection to the new members being detailed, participated in voir dire and the discussion about how to present the record to the new members, and stated that they had no objection to the procedure used. Appellate defense counsel identified no errors related to this procedure in their brief to the AFCCA, and even today, Appellee does not allege that trial defense counsel's tactical decisions to challenge the original member for cause and continue the trial with two new members constituted ineffective assistance of counsel. In light of the above, we would ordinarily conclude that Appellee affirmatively consented to the application of the procedure established in Article 29(b), UCMJ, and implemented by R.C.M. 805(d)(1), and waived his right to object to them at this

juncture, particularly when he failed to raise them before the AFCCA.  See United States v. Campos, 67 M.J. 330 (C.A.A.F. 2009) (holding that the appellant waived his right to challenge the admissibility of a stipulation of expected testimony when defense counsel, at trial, had affirmatively responded that he had no objection to the stipulation, had advance notice of the stipulation, and had considered the impact of the stipulation on the appellant's case; and when the appellant, on appeal, had not alleged ineffective assistance of counsel).  However, given that the application of these procedures in this context has not previously been addressed by this Court, and that this Court harbors a presumption against waiver of the fullest expression of rights under the Confrontation Clause, see United States v. Harcrow, 66 M.J. 154, 157 (C.A.A.F. 2008), we will treat the failure to object as forfeiture and review for plain error.  See id. at 158.

Regardless, given the absence of an objection, it is a certainty that the AFCCA erred in determining that there was reversible error without identifying prejudice to a substantial right of the accused.  Both parties agree that the alleged error was not structural, Brief for Appellee at 40, United States v. Vazquez, No. 12-5002 (C.A.A.F. June 28, 2012); Brief for Appellant at 36-37, United States v. Vazquez, No. 12-5002 (C.A.A.F. May 30, 2012), and the AFCCA disavowed the notion of

9

structural error in its second opinion.  Vazquez, 71 M.J. at 552 n.15.  Accordingly, because it "does not constitute structural error subject to automatic dismissal," the alleged error would be subject to plain error analysis.  United States v. Humphries, 71 M.J. 209, 212 (C.A.A.F. 2012); see also Neder v. United States, 527 U.S. 1, 8 (1999) (recognizing that most constitutional errors are subject to harmless error analysis). In this context, the AFCCA's conclusion that "[a] violation of the appellant's military due process rights [is] per se prejudicial and mandate[s] reversal of the appellant's conviction," Vazquez, 71 M.J. at 552, misstates the law.  See Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006) ("A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.").

## B.

No one disagrees that the military judge scrupulously followed the procedures established by Congress in Article 29(b), UCMJ, as implemented by the President under R.C.M. 805(d)(1).  And no one, including the AFCCA, argues that the statutory scheme is unconstitutional on its face.  At issue, therefore, is whether the application of Article 29(b), UCMJ, and R.C.M. 805(d)(1) to Appellee's case is constitutional as applied to him.  If so, the military judge did not commit error,

let alone plain error, in applying them.

"The constitutionality of an act of Congress is a question of law that we review de novo."  United States v. Ali, 71 M.J. 256, 265 (C.A.A.F. 2012).  To determine if "a statute is 'unconstitutional as applied,' we conduct a fact-specific inquiry."  Id. (footnote omitted).

In Article 29(b), UCMJ, Congress provided for a contingency procedure in the event of a loss of quorum:

> Whenever a general court-martial, other than a general court-martial composed of a military judge only, is reduced below five members, the trial may not proceed unless the convening authority details new members sufficient in number to provide not less than five members.  The trial may proceed with the new members present after the recorded evidence previously introduced before the members of the court has been read to the court in the presence of the military judge, the accused, and counsel for both sides.

The President implemented this statute as follows:

> (1) Members.  When after presentation of evidence on the merits has begun, a new member is detailed under R.C.M. 505(c)(2)(B), trial may not proceed unless the testimony and evidence previously admitted on the merits, if recorded verbatim, is read to the new member, or, if not recorded verbatim, and in the absence of a stipulation as to such testimony and evidence, the trial proceeds as if no evidence has been presented.

R.C.M. 805(d)(1).  The analysis of this provision describes it as "a means to proceed with a case in the rare circumstance in which a court-martial is reduced below a quorum after trial on the merits has begun and a mistrial is inappropriate."  Manual

for Courts-Martial, United States, Analysis of the Rules for

Courts-Martial app. 21 at A21-47 (2008 ed.) (MCM).[2]

Whether Article 29(b), UCMJ, is constitutional as applied

to Appellee's case is controlled by the test adopted in Weiss v.

United States, 510 U.S. 163 (1994).  In Weiss, the petitioners

contended that they were entitled to relief because due process

required military judges to serve for some fixed length of time

to ensure independence and impartiality.  Id. at 176, 178.  The

Court, in analyzing this claim, noted that:

> Congress, of course, is subject to the
> requirements of the Due Process Clause when
> legislating in the area of military affairs, and that
> Clause provides some measure of protection to
> defendants in military proceedings.  But in
> determining what process is due, courts "must give
> particular deference to the determination of Congress,
> made under its authority to regulate the land and
> naval forces, U.S. Const., Art. I, § 8." . . .
> Congress has "plenary control over rights, duties, and
> responsibilities in the framework of the Military
> Establishment, including regulations, procedures, and
> remedies related to military discipline."  Judicial
> deference thus "is at its apogee" when reviewing
> congressional decisionmaking in this area.  Our
> deference extends to rules relating to the rights of
> servicemembers:  "Congress has primary responsibility
> for the delicate task of balancing the rights of
> servicemen against the needs of the military. . . .
> [W]e have adhered to this principle of deference in a
> variety of contexts where, as here, the constitutional
> rights of servicemen were implicated."

---

[2] In the 2005 edition of the MCM, the discussion following R.C.M.
805(d) notes that "[w]hen the court-martial has been reduced
below a quorum, a mistrial may be appropriate."  R.C.M. 805(d)
Discussion.

Id. at 176-77 (latter omission in original) (citations omitted).[3]

In this context, the Supreme Court held that a petitioner's

rights were violated only if "the factors militating in favor of

[the petitioner's interest] are so extraordinarily weighty as to

overcome the balance struck by Congress."  Id. 177-78 (internal

quotation marks omitted).  Applying this standard, the Court

_____

[3] Given the plenary authority of Congress, itself subject to the requirements of the Due Process Clause, to legislate in the area of rules relating to the rights of servicemembers at courts-martial, see Weiss, 510 U.S. at 176-77, and the President's authority to make rules implementing Article 29(b), UCMJ, see United States v. Easton, 71 M.J. 168, 176 (C.A.A.F. 2012) (noting "the President's authority as Commander in Chief and as delegated by Congress pursuant to Article 36, UCMJ, 10 U.S.C. § 836 (2006)" to prescribe rules governing courts-martial); cf. United States v. Jones, 68 M.J. 465, 477 (C.A.A.F. 2010) (Baker, J., dissenting) ("[T]he President's authority is at its zenith when he acts pursuant to Article 36, UCMJ, because he operates with his own authority as well as that expressly delegated by the Congress."), we recognize that the choices made by Congress and the President in establishing the procedures for courts-martial under Article 29(b), UCMJ, and R.C.M. 805(d) are entitled to a high degree of deference, see Weiss, 510 U.S. at 176-77.  In view of that deference, we disagree with the conclusions reached by the AFCCA and Chief Judge Baker.  While it is axiomatic that an accused is entitled to a fair trial, see id. at 178, absent an argument that the statutory scheme is facially unconstitutional, or an accused demonstrating that it is unconstitutional as applied to him, we presume that the statutory scheme established by Congress and implemented by the President constitutes both the parameters of what process is due and a fair trial in the military context.  Id. at 181; see United States v. Mitchell, 39 M.J. 131, 137 (C.M.A. 1994).  Appellee, however, concedes that Article 29(b), UCMJ, is not facially unconstitutional, Brief for Appellee at 24, United States v. Vazquez, No. 12-5002 (C.A.A.F. June 28, 2012), and no one disagrees that Appellee has failed to meet his burden to show that it is unconstitutional as applied to him.  See infra Part III.C; United States v. Vazquez, __ M.J. __ (3) (C.A.A.F. 2013) (Baker, C.J., concurring in the result).

found that the petitioners fell "far short" of demonstrating that their interest should overcome Congress' determination because (1) fixed terms of office had never been a part of the military tradition, and (2) the UCMJ sufficiently preserved judicial impartiality. Id. at 179, 181.

The Weiss standard controls Appellee's claim that Article 29(b), UCMJ, and the procedures to implement it set forth in R.C.M. 805(d)(1) are unconstitutional as applied to him. See United States v. Gray, 51 M.J. 1, 49-50 (C.A.A.F. 1999) (holding that the Weiss standard was "the appropriate test to determine due process violations in court-martial procedure"); see also Easton, 71 M.J. at 174-76 (holding that Article 44(c), UCMJ, is constitutional as applied to trials by court members when Congress appropriately exercised its Article I power). Moreover, like the petitioners in Weiss, Appellee has the burden to demonstrate that Congress' determination should not be followed. Weiss, 510 U.S. at 181; see Mitchell, 39 M.J. at 137 (holding that the appellant's argument failed to satisfy the Weiss standard "because he has not met his heavy burden to show the Constitutional invalidity of this facet of the military justice system").

### C.

We disagree that the military judge erred in this case. The AFCCA did not cite Weiss as controlling authority, but

rather determined sua sponte that a mistrial was warranted because it believed that there is a "military due process" right to have a panel of members "who have all heard and seen the same material evidence," and a Sixth Amendment right to have all members view a witness's demeanor.[4]  Vazquez, 71 M.J. at 546-50. Both positions are contrary to the plain language of Article 29(b), UCMJ.

First, the AFCCA mistakenly relied on the concept of "military due process," an amorphous concept as used by the AFCCA that appears to suggest that servicemembers enjoy due process protections above and beyond the panoply of rights provided to them by the plain text of the Constitution, the UCMJ, and the MCM.  They do not.

Second, Article 29(b), UCMJ, specifically authorizes the procedures used in this case, and represents Congress' view of what "process is due" in the event a panel falls below quorum. Here, while it was within the military judge's discretion to

---

[4] The AFCCA also determined that the application of Article 29(b), UCMJ, and R.C.M. 805(d)(1) violated Appellee's right to have panel members comply with a military judge's instructions. Vazquez, 71 M.J. at 547-48.  However, the AFCCA did not find that any of the members disregarded the military judge's instructions, and its determination that the new members were incapable of following the military judge's instructions to assess the witness's credibility substantively duplicates its Confrontation Clause holding and would result in a military due process violation each time written witness testimony is properly admitted in a court-martial.

either (1) recall witnesses who had testified prior to Lt.
Conn's removal from the panel under M.R.E. 614, or (2) declare a
mistrial under R.C.M. 915(a), the military judge did not abuse
his discretion in deciding to proceed in accordance with the
statute and R.C.M. 805(d)(1), particularly when defense counsel
affirmatively stated that they did not object to the procedures
that were actually used.  It was Appellee's burden to develop a
record at trial establishing that the procedures permitted by
statute were unconstitutional as applied to him.  See supra Part
III.B.  Appellee's acquiescence and complicity in every aspect
of the procedures used did not create a record upon which to
support an as-applied challenge.  Nor did they afford the
military judge either a reason to declare a mistrial or a reason
or opportunity to craft alternative procedures short of a
mistrial, such as recalling witnesses, to obviate the
Confrontation Clause complaints Appellee now raises for the
first time.[5]

---

[5] Moreover, we disagree with Chief Judge Baker's view that the
military judge abused his discretion by not invoking R.C.M.
915(b) when the court-martial dropped below quorum in this case.
R.C.M. 915(b) requires the military judge to "inquire into the
views of the parties" when "grounds for a mistrial may exist"
and "then decide the matter as an interlocutory question."
R.C.M. 915(b).  "[A] mistrial is a drastic remedy [that] is
reserved for only those situations where the military judge must
intervene to prevent a miscarriage of justice."  United States
v. Garces, 32 M.J. 345, 349 (C.M.A. 1991).  "Because of the
extraordinary nature of a mistrial, military judges should
explore the option of taking other remedial action . . . ."

Third, while "[i]t is elementary that 'a fair trial in a fair tribunal is a basic requirement of due process,'" Weiss, 510 U.S. at 178 (quoting In re Murchison, 349 U.S. 133, 136 (1955); see also Mitchell, 39 M.J. at 136 (quoting same), like the petitioners in Weiss, Appellee has further failed to show, either at trial or before this Court, how the members in his case were either actually unfair or appeared to be unfair. See Weiss, 510 U.S. at 178. While the AFCCA made a generalized assertion that R.C.M. 805(d)(1)'s procedures violated Appellee's due process right to a fair and impartial jury because of the possibility that the original four members exerted undue influence on the two new members, Vazquez, 71 M.J. at 550, it failed to consider, let alone apply, the high bar set in Weiss for a determination that the balance struck by Congress in Article 29(b), UCMJ, is unconstitutional as applied to a particular individual.

---

United States v. Ashby, 68 M.J. 108, 122 (C.A.A.F. 2009). Chief Judge Baker, in assessing whether grounds for a mistrial may have existed in this case, does not give the requisite weight to the procedures set forth in Article 29(b), UCMJ, and R.C.M. 805(d) to address a loss of quorum. Where, as here, (1) the military judge diligently followed the procedures established under Article 29(b), UCMJ, and R.C.M. 805(d), and (2) Appellee fails to establish that the application of these procedures deprived him of his due process right to a fair trial under the facts of his case, the military judge could not have possibly abused his discretion in determining that this remedial action alleviated any potential grounds for a mistrial, and, thus, a duty to turn to R.C.M. 915(b)'s procedures.

United States v. Vazquez, 12-5002/AF

Instead, the AFCCA asserted that "implicit in the concept of a fair and impartial panel is the obligation to have members present who have all heard and seen the same material evidence. As such, the appellant's military due process rights in this regard were violated." Id. In its view, there is a "military due process" right to have all members be presented with all evidence in the same way, and, "[i]f an accused is entitled to have a 'jury' determine his fate, that right must include, at a minimum, having the same jury present for the entire trial." Id. at 549. Not only are these propositions directly contrary to Article 29(b), UCMJ -- not to mention other provisions of the UCMJ and MCM, see Article 41, UCMJ, 10 U.S.C. § 841 (2006); R.C.M. 505; R.C.M. 912(f) -- but also the AFCCA provides no relevant authority in support of its bald assertions and fails to explain how Article 29(b), UCMJ, could even be facially constitutional if either of their assertions was correct.

Fourth, "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Coy v. Iowa, 487 U.S. 1012, 1016 (1988); see also United States v. McCollum, 58 M.J. 323, 329 (C.A.A.F. 2003) ("[T]he [Supreme] Court has stressed that an accused's right to physical, face-to-face confrontation with witnesses against him forms the core of the Confrontation Clause."). "The central concern of the Confrontation Clause is to ensure the reliability

18

of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. 836, 845 (1990); Kentucky v. Stincer, 482 U.S. 730, 739 (1987) ("[T]he right to confrontation is a functional one for the purpose of promoting reliability in a criminal trial.").

As applied, and with no contrary facts developed by Appellee at trial, Article 29(b), UCMJ, sufficiently satisfies the central concern of the Confrontation Clause. Here, each witness testified under oath and in the presence of the accused and four of the final panel members. Appellee also had the opportunity to cross-examine each witness. Accordingly, the verbatim transcript read to the two new panel members was subject "to rigorous testing in the context of an adversary proceeding," Craig, 497 U.S. at 845, and would be admissible under the former testimony hearsay exception if the witnesses were found to be unavailable in a subsequent proceeding, even over defense objection. See M.R.E. 804(b)(1); see also United States v. Hubbard, 28 M.J. 27, 31-33 (C.M.A. 1989) (military judge did not err in admitting, over defense objection, an unavailable witness's Article 32, UCMJ, testimony under the former testimony exception to the hearsay rule); United States v. Arruza, 26 M.J. 234, 235-36 (C.M.A. 1988) (military judge did not err in admitting, over defense objection, a substantially

19

verbatim transcript of an unavailable witness's Article 32,
UCMJ, testimony under the former testimony exception to the
hearsay rule).

Moreover, while we do not discount the importance of the
trier of fact observing witness demeanor to the central concerns
of the Confrontation Clause, we note that absent a defense
objection, or in the event of witness unavailability, the
presentation of "written" witness "testimony," without any of
the members seeing the witness's demeanor, is both an accepted
practice and constitutionally unremarkable. See, e.g., M.R.E.
804(b)(1) (requiring that for certain former testimony to be
admissible under the rule, the testimony be offered in the form
of a "verbatim record"). Stipulations of expected testimony,
Article 32, UCMJ, testimony, and deposition transcripts are
routinely presented to members and, absent objection, pose no
dangers to the integrity of the courts-martial or the fairness
of the members.[6]  See R.C.M. 811(a) ("The parties may make an
oral or written stipulation to . . . the expected testimony of a
witness."); United States v. Clark, 53 M.J. 280, 281-82
(C.A.A.F. 2000) ("Evidence that otherwise would be inadmissible
under the Military Rules of Evidence may sometimes be admitted

---

[6] And in some cases, like the current case, we can well see why a
defendant might prefer to have a "cold" reading of a witness's
statement rather than the physical presence of a four-year-old
child alleging a sexual assault.

at trial through a stipulation, if the parties expressly agree, if there is no overreaching on the part of the Government in obtaining the agreement, and if the military judge finds no reason to reject the stipulation 'in the interest of justice.'" (quoting United States v. Glazier, 26 M.J. 268, 270 (C.M.A. 1988))); see also M.R.E. 804(b)(1); United States v. Connor, 27 M.J. 378, 389 (C.M.A. 1989) (concluding that a military judge did not err in admitting testimony from the appellant's pretrial hearing under Article 32, UCMJ, because the conditions for admitting former testimony under M.R.E. 804(b)(1) were met, and the defense had both the "opportunity" for cross-examination and a "similar motive" to cross-examine).  In that light, Appellee has shown neither that "the factors militating in favor of [his interest] are so extraordinarily weighty as to overcome the balance struck by Congress," Weiss, 510 U.S. at 177-78, nor that his rights under the Confrontation Clause were violated.

While a case could exist where Article 29(b), UCMJ, would be unconstitutional as applied, Appellee has not met the burden of showing that it is his case.

IV.  DECISION

The decision of the United States Air Force Court of Criminal Appeals is reversed.  The record of trial is returned to the Judge Advocate General of the Air Force for remand to the

21

Court of Criminal Appeals for further proceedings under Article

66, UCMJ, 10 U.S.C. § 866 (2006).

United States v. Vazquez, No. 12-5002/AF

BAKER, Chief Judge (concurring in the result):

I write separately because while I agree with the majority's result, I do not share the majority's view that this is, at heart, a case only about Article 29, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 829 (2006), including whether it is facially valid -- it is. Rather, like the Court of Criminal Appeals, I believe this case is about whether or not, in the particular circumstances of this court-martial, Appellee received a fair trial. While I believe Appellee ultimately received a fair trial for reasons described below, we need not be in the position of speculating as to what may or may not have been in Appellee's interest or whether he did or did not waive the issue. That is because Rule for Courts-Martial (R.C.M.) 915 provides a mechanism for addressing such issues where grounds for a mistrial may exist. The difference in legal view between the majority and this concurrence is over whether grounds for a mistrial may have existed where five of the six Government witnesses, including the victim, had already testified before two out of a total of six members were added to return to quorum. In the circumstances of this case, I believe the military judge abused his discretion in not applying R.C.M. 915.

Right to a Fair Trial

Article 29, UCMJ, identifies a normative way to address the loss of quorum where new members are added to a court-martial who have not had the benefit of the prior testimony.  However, it is not an exclusive approach.  And, as the court below notes, Article 29, UCMJ, does not purport to address or resolve potential due process concerns that might arise in the context of adding new members to a court-martial that is well underway or where demeanor evidence is essential.  General principles of due process and impartiality also apply as does R.C.M. 805(d), and in context, R.C.M. 915.

For example, in he-said-she-said sex cases where there is no physical evidence, demeanor evidence could be determinative. Therefore, the rote application of R.C.M. 805(d) and Article 29 UCMJ, could deprive a defendant of a fair trial where all or most of the witnesses have testified before the original court-martial panel prior to its reduction below quorum.  In such a case, simply reading the transcripts of the prior testimony aloud to the replacement members could deprive them of information critical to making credibility determinations.  The Supreme Court has recognized that "demeanor and tone of voice . . . bear . . . heavily on the listener's understanding of and belief in what is said."  Anderson v. Bessemer City, 470 U.S. 564, 575 (1985).  The point might also be illustrated with

2

reference to a he-said-she-said case where the single witness against an accused (the victim) had already testified.  Such an example might illustrate that in certain rare cases, reading aloud the transcripts of prior testimony to the replacement members will not for the purposes of due process necessarily and adequately substitute for the observations of in-court demeanor as the majority now concludes.  Congress did not decide otherwise with Article 29, UCMJ.

However, even given the unusual circumstances of this case, I conclude ultimately that there was no due process violation in this case where five of the Government's six witnesses, including the victim, had already testified.  First, the members were presented with the testimony in question.  Second, the members were allowed to ask questions.  Third, defense counsel was given an opportunity to object and given adequate time to consider whether to do so.  Most importantly, in the context of this trial there might be good reasons why a defendant would not want the victim to testify before the new members, but would prefer the more sterile reading of a transcript.  The same is true with expert testimony, although the difference between seeing an expert's in-court testimony and listening to the transcript of that testimony may be less dramatic than in the case of a child witness.  Therefore, this record does not

establish a violation of Appellee's constitutional right to a fair trial.

Of course, we do not know whether Appellee made a conscious choice not to request the recall of one or more witnesses, whether he thought the demeanor evidence helpful or unhelpful, or whether he fully understood his options when quorum was lost because the record is devoid of such discussion. There is a solution to that -- R.C.M. 915.

The difference in legal view between the majority and me is over whether grounds for a mistrial may have existed. If the answer to that question is yes, then R.C.M. 915 applies to this case and the military judge abused his discretion by not applying it. Indeed, if applied, the rule would have addressed the questions presented here head-on, without need to now speculate at the appellate level about waiver, the importance of demeanor evidence, whether or not Appellee would have benefitted from the recall of one or more witnesses, and whether the accused's right to a fair trial was protected.

In my view, the military judge in this trial had a duty to inquire of the parties whether they wanted to proceed with a mistrial, recall the Government witnesses who had already testified, or proceed with the application of R.C.M. 805(d) and Article 29, UCMJ.

As noted above, R.C.M. 915(b) requires that:

> On motion for a mistrial or when it otherwise appears <u>that grounds for a mistrial may exist</u>, the military judge <u>shall inquire</u> into the views of the parties on the matter and then decide the matter as an interlocutory issue

Emphasis added.  Here, Appellee's trial was a textbook example of an instance where grounds for a mistrial may have existed. Five of the six Government witnesses, including the child-accuser, had already testified before one of the five members of the panel was excused and replaced by two new members who were read the transcribed testimony of the five witnesses who had already testified.  There was no physical evidence to corroborate the alleged sexual offense.

Typically, demeanor is but one component of testimony factfinders use to determine guilt or innocence.  However, demeanor was essential in this case because it was a credibility contest between the victim and the accused in a case devoid of physical evidence.  The military judge presiding over Appellee's trial was on notice that problems related to demeanor evidence could create conditions necessitating declaration of a mistrial to prevent injustice.  See United States v. Ashby, 68 M.J. 108 (C.A.A.F. 2009) (mistrial is appropriate when "manifestly necessary" in the interest of justice) (citation and internal quotation marks omitted).

Here the military judge presented only one option: application of R.C.M. 805(d).  He did not elicit views on

5

whether a mistrial or a recall of one or more witnesses was required. After conferencing with the defense and trial counsel in an R.C.M. 802 conference, the military judge went on the record and stated:

> I have discussed with counsel, in an 802, our plans for how we will proceed in order to comply with RCM 805(d) and the guidance therein as to how to proceed when the membership of the court has been reduced below a quorum under RCM 505(c)(2)(b) after trial on the merits has begun.

The military judge then asked, "Do counsel for either side object to our proceeding in that manner or have anything else they wish to place on the record in this regard?" Neither the defense counsel nor trial counsel objected or made any additional statements regarding their options.

However, in a context where R.C.M. 915 was not followed, and all three available options were not discussed with the parties, I would not apply waiver to Appellee's case. Instead, I would treat this as a matter of forfeiture and review for plain error. For the reasons stated above, I would then find a clear and obvious error in not applying R.C.M. 915. However, I would not find prejudice. For plain error analysis, Appellee bears the burden of demonstrating material prejudice to a substantial right. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006). Here, Appellee has failed to carry this burden for the same reasons the record fails to establish a violation of his right to a fair trial.

6

STUCKY, Judge (concurring in the result):

I have no disagreement whatsoever with the majority concerning the merits of this case.  The military judge did not commit error in applying the procedures set forth in Article 29(b), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 829(b) (2006), and Rule for Courts-Martial (R.C.M.) 805(d)(1) to this case.  I also strongly agree with the Court's discussion of military due process, including the applicability of Weiss v. United States, 510 U.S. 163 (1994).  I write separately solely because I am unable to join the majority opinion in reviewing the judgment of the United States Air Force Court of Criminal Appeals for plain error.  Appellee clearly waived any objection to the procedures the military judge followed, which were consistent with Article 29(b) and R.C.M. 805.

Before granting the implied bias challenge on Lieutenant (Lt.) Conn, the military judge warned Appellee that granting the challenge would have consequences.  The defense counsel asked for a recess so he could discuss the issue with his client. When court reconvened an hour later, the military judge asked the defense counsel if Appellee still wished to challenge Lt. Conn.  The defense maintained the challenge.  The military judge granted the challenge and advised the parties "to prepare to regroup and proceed as instructed in the Manuals (sic) for

Courts-Martial." When asked whether he concurred with that approach, the defense counsel said he did.

The following day during a pretrial hearing, the military judge advised Appellee that new members had been chosen. The defense denied having any objection to the selection of the new members. After voir dire and challenges, the new members were seated and, in the presence of Appellee and his counsel, the military judge advised them of the procedures that would be followed -- that the transcribed testimony of the witnesses who had already testified would be read to them. In an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2006), session, the military judge advised counsel that he intended to proceed under R.C.M. 805(d), which details the procedures for reading the testimony to the new members. He then asked if counsel objected to proceeding in that manner. Defense counsel answered in the negative.

In this case, the military judge offered Appellee several opportunities to object to the procedure for replacing court members and reading a transcript of the previously given testimony to the new members. Appellee did not merely forfeit this issue by not objecting, such that we would apply plain error; he affirmatively declined to object to any aspect of the procedure. Under these circumstances, I conclude he waived appellate review of this issue.