BAKER, Chief Judge
(concurring in the result):
I write separately because while I agree with the majority’s result, I do not share the majority’s view that this is, at heart, a case only about Article 29, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 829 (2006), including whether it is facially valid — it is. Rather, like the Court of Criminal Appeals, I believe this case is about whether or not, in the particular circumstances of this court-martial, Appellee received a fair trial. While I believe Appellee ultimately received a fair *22 trial for reasons described below, we need not be in the position of speculating as to what may or may not have been in Appellee’s interest or whether he did or did not waive the issue. That is because Rule for Courts-Martial (R.C.M.) 915 provides a mechanism for addressing such issues where grounds for a mistrial may exist. The difference in legal view between the majority and this concurrence is over whether grounds for a mistrial may have existed where five of the six Government witnesses, including the victim, had already testified before two out of a total of six members were added to return to quorum. In the circumstances of this case, I believe the military judge abused his discretion in not applying R.C.M. 915.

Right to a Fair Trial

Article 29, UCMJ, identifies a normative way to address the loss of quorum where new members are added to a court-martial who have not had the benefit of the prior testimony. However, it is not an exclusive approach. And, as the court below notes, Article 29, UCMJ, does not purport to address or resolve potential due process concerns that might arise in the context of adding new members to a court-martial that is well underway or where demeanor evidence is essential. General principles of due process and impartiality also apply as does R.C.M. 805(d), and in context, R.C.M. 915.
For example, in he-said-she-said sex cases where there is no physical evidence, demean- or evidence could be determinative. Therefore, the rote application of R.C.M. 805(d) and Article 29 UCMJ, could deprive a defendant of a fair trial where all or most of the witnesses have testified before the original court-martial panel prior to its reduction below quorum. In such a case, simply reading the transcripts of the prior testimony aloud to the replacement members could deprive them of information critical to making credibility determinations. The Supreme Court has recognized that “demeanor and tone of voice ... bear ... heavily on the listener’s understanding of and belief in what is said.” Anderson v. Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The point might also be illustrated with reference to a he-said-she-said case where the single witness against an accused (the victim) had already testified. Such an example might illustrate that in certain rare cases, reading aloud the transcripts of prior testimony to the replacement members will not for the purposes of due process necessarily and adequately substitute for the observations of in-court demeanor as the majority now concludes. Congress did not decide otherwise with Article 29, UCMJ.
However, even given the unusual circumstances of this case, I conclude ultimately that there was no due process violation in this case where five of the Government’s six witnesses, including the victim, had already testified. First, the members were presented with the testimony in question. Second, the members were allowed to ask questions. Third, defense counsel was given an opportunity to object and given adequate time to consider whether to do so. Most importantly, in the context of this trial there might be good reasons why a defendant would not want the victim to testify before the new members, but would prefer the more sterile reading of a transcript. The same is true with expert testimony, although the difference between seeing an expert’s in-court testimony and listening to the transcript of that testimony may be less dramatic than in the ease of a child witness. Therefore, this record does not establish a violation of Appel-lee’s constitutional right to a fair trial.
Of course, we do not know whether Appel-lee made a conscious choice not to request the recall of one or more witnesses, whether he thought the demeanor evidence helpful or unhelpful, or whether he fully understood his options when quorum was lost because the record is devoid of such discussion. There is a solution to that — R.C.M. 915.
The difference in legal view between the majority and me is over whether grounds for a mistrial may have existed. If the answer to that question is yes, then R.C.M. 915 applies to this case and the military judge abused his discretion by not applying it. Indeed, if applied, the rule would have addressed the questions presented here head-on, without need to now speculate at the *23 appellate level about waiver, the importance of demeanor evidence, whether or not Appel-lee would have benefitted from the recall of one or more witnesses, and whether the accused’s right to a fair trial was protected.
In my view, the military judge in this trial had a duty to inquire of the parties whether they wanted to proceed with a mistrial, recall the Government witnesses who had already testified, or proceed with the application of R.C.M. 805(d) and Article 29, UCMJ.
As noted above, R.C.M. 915(b) requires that:
On motion for a mistrial or when it otherwise appears that grounds for a mistrial may exist, the military judge shall inquire into the views of the parties on the matter and then decide the matter as an interlocutory issue
Emphasis added. Here, Appellee’s trial was a textbook example of an instance where grounds for a mistrial may have existed. Five of the six Government witnesses, including the child-accuser, had already testified before one of the five members of the panel was excused and replaced by two new members who were read the transcribed testimony of the five witnesses who had already testified. There was no physical evidence to corroborate the alleged sexual offense.
Typically, demeanor is but one component of testimony factfinders use to determine guilt or innocence. However, demeanor was essential in this case because it was a credibility contest between the victim and the accused in a case devoid of physical evidence. The military judge presiding over Appellee’s trial was on notice that problems related to demeanor evidence could create conditions necessitating declaration of a mistrial to prevent injustice. See United States v. Ashby, 68 M.J. 108 (C.A.A.F.2009) (mistrial is appropriate when “manifestly necessary” in the interest of justice) (citation and internal quotation marks omitted).
Here the military judge presented only one option: application of R.C.M. 805(d). He did not elicit views on whether a mistrial or a recall of one or more witnesses was required. After conferencing with the defense and trial counsel in an R.C.M. 802 conference, the military judge went on the record and stated:
I have discussed with counsel, in an 802, our plans for how we will proceed in order to comply with RCM 805(d) and the guidance therein as to how to proceed when the membership of the court has been reduced below a quorum under RCM 505(c)(2)(b) after trial on the merits has begun.
The military judge then asked, “Do counsel for either side object to our proceeding in that manner or have anything else they wish to place on the record in this regard?” Neither the defense counsel nor trial counsel objected or made any additional statements regarding their options.
However, in a context where R.C.M. 915 was not followed, and all three available options were not discussed with the parties, I would not apply waiver to Appellee’s case. Instead, I would treat this as a matter of forfeiture and review for plain error. For the reasons stated above, I would then find a clear and obvious error in not applying R.C.M. 915. However, I would not find prejudice. For plain error analysis, Appellee bears the burden of demonstrating material prejudice to a substantial right. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006). Here, Appellee has failed to carry this burden for the same reasons the record fails to establish a violation of his right to a fair trial.