# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

### No. ACM S32412

_____

### UNITED STATES
*Appellee*

**v.**

### Jazmine J. MONARQUE
Senior Airman (E-4), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 6 March 2017

_____

*Military Judge:* Andrew Kalavanos (sitting alone).

*Approved sentence:* Bad-conduct discharge, confinement for 3 months, and reduction to E-1. Sentence adjudged 26 October 2015 by SpCM convened at Hurlburt Field, Florida.

*For Appellant:* Major Mark C. Bruegger, USAF.

*For Appellee:* Captain Matthew L. Tusing, USAF, and Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, AND CARRILLO, *Appellate Military Judges.*

Judge CARRILLO delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge JOHNSON joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

_____

CARRILLO, Judge:

A special court-martial composed of a military judge sitting alone found Appellant guilty consistent with her pleas of one charge and two specifications

of larceny of federal government property, and one charge and two specifications of fraud against the United States, in violation of Articles 121 and 132, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921, 932. The adjudged and approved sentence was a bad-conduct discharge, confinement for three months, and reduction to E-1.

Appellant raises one assignment of error: the military judge erred by admitting evidence of a record of nonjudicial punishment issued more than five years prior to the referral of charges. We find Appellant waived this issue and affirm.

## I. BACKGROUND

Appellant was assigned to the Traffic Management Office (TMO) at Hurlburt Field, Florida, where one of her duties was to process Do-It-Yourself (DITY) move packages for military members. As part of this job, she would review DITY packages to make sure the required documents, such as weight tickets, were included. On or about 24 October 2014, Appellant submitted her own DITY move package for a home of record move. Included in her package were two weight tickets that did not belong to her but that she altered to look like they did. Appellant had taken the weight tickets from a military member who had turned in a DITY move, copied them, put white-out over the name, date, and type of vehicle, wrote her name instead, and signed them. She was paid $3,513.11 for the claimed move. About four days later, on or about 28 October 2014, Appellant did the same thing again. She turned in another DITY move package with fraudulent weight tickets doctored in the same way. She was paid $2,349.97 for this second claimed move.

Almost six and a half years before Appellant's court-martial, she received nonjudicial punishment pursuant to Article 15, UCMJ, 10 U.S.C. § 815, for stealing a fellow military member's credit card and using it to steal $136.23 worth of money, food, and gas; she also wrongfully tried to influence the testimony of the victim by asking him to tell security forces that he had given her his credit card.

In its sentencing case, trial counsel offered the Air Force Form 3070A, Record of Nonjudicial Punishment (Article 15) into evidence. Defense counsel indicated no objection. Trial counsel also introduced Appellant's Enlisted Performance Reports, one of which referenced the Article 15 and underlying larceny charge. Again, defense counsel did not object to its admission.

## II. DISCUSSION

Pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), Appellant argues that the military judge abused his discretion by admitting the Article 15 at sentencing. We review a military judge's admission or exclusion of sentencing evidence for an abuse of discretion. *United States v. Carter,* 74 M.J. 204, 206 (C.A.A.F. 2015) (citing *United States v. Stephens,* 67 M.J. 233, 235 (C.A.A.F. 2009)). "An abuse of discretion occurs when a military judge either erroneously applies the law or clearly errs in making his or her findings of fact." *United States v. Donaldson,* 58 M.J. 477, 482 (C.A.A.F. 2003) (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)).

However, there is a threshold issue of whether Appellant expressly waived the right to challenge the admissibility of the Article 15 on appeal, or forfeited the issue thus requiring its admission to be reviewed for plain error. *United States v. Campos,* 67 M.J. 330, 331 (C.A.A.F. 2009); *see also United States v. Pappas,* 409 F.3d 828, 829 (7th Cir. 2005) (before reaching the merits of the appellant's appeal of a restitution order, the court must determine if the issue was either waived or forfeited).

Appellant may not raise on appeal an error that was waived at trial. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *see also United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005) ("A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law."). The distinction between the terms is important. If an appellant has forfeited a right by failing to raise it at trial, we review for plain error. *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008) (citing *Olano*, 507 U.S. at 733–34). When, on the other hand, an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal. *Gladue*, 67 M.J. at 313 (citing *Harcrow*, 66 M.J. at 156).

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *Id.* at 314 (quoting *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995)). However, the Court of Appeals for the Armed Forces (CAAF) "harbors a presumption against waiver of the fullest expression of rights under the Confrontation Clause," and "will treat a failure to object as forfeiture and review for plain error." *United States v. Vazquez,* 72 M.J. 13, 17 (C.A.A.F. 2013). The CAAF explained: "the Supreme Court long ago emphasized the . . . presumption against the waiver of constitutional rights." *Harcrow*, 66 M.J. at 157 (internal quotation omitted). The CAAF noted, however, that waivers of a non-constitutional right are not

held to the same presumption. *Id.*; *see also Campos*, 67 M.J. at 330 (holding that the appellant waived right to challenge the admissibility of a stipulation of expected testimony when defense counsel affirmatively responded that he had no objection, had advance notice, and considered the impact of the stipulation on the appellant's case, and on appeal appellant had not alleged ineffective assistance of counsel).

In *United States v. Gammons,* the CAAF similarly found waiver applicable when "the military judge ascertained the defense plan to make use of the [nonjudicial punishment for a prior Article 15 issued for the charged offense], the first substantive use of the [nonjudicial punishment] was made by the defense, and the comments by trial counsel simply highlighted information about the sequence of events that was already before the military judge." 51 M.J. 169, 181 (C.A.A.F. 1999). The *Gammons* court explicitly found those circumstances did not "require invocation of plain error." *Id.*

In this case, the alleged error does not implicate a constitutional right but rather a violation of Rule for Courts-Martial (R.C.M.) 1001(b)(2), a presidential policy promulgated under Article 36(a), UCMJ, authority. *See Gladue*, 67 M.J. at 314 (citing *United States v. Weymouth*, 43 M.J. 329, 335 (C.A.A.F. 1995) (the President evinces policy in the UCMJ)). Thus, there is not a strong presumption against waiver in this instance. In fact, R.C.M. 1001(b)(2) states that "[o]bjections not asserted are waived."

R.C.M. 1001(b)(2) allows admission of "disciplinary actions including punishments under Article 15" that are "made or maintained in accordance with departmental regulations." The relevant departmental regulations for maintaining Article 15s are found in Air Force Instruction (AFI) 51-202, *Nonjudicial Punishment* (31 Mar. 2015). The official "record" of nonjudicial punishment "consists of the Air Force Form 3070, the decision letter under AFI 36-2608, *Military Personnel Records System,* and if applicable, Air Force Forms 366, 3212, and any of their attachments. Examples of attachments are additional pages for punishment or statement of offenses, change of commander notifications, waivers of the statute of limitation, withdrawals of request for trial, and indorsements correcting errors requiring explanation." AFI 51-202, ¶ 6.11. Supporting documentation to the official record includes "[e]vidence and other written materials . . . submitted by the member in mitigation, extenuation, or defense or on appeal . . . and [is] not part of the record." AFI 51-202, ¶ 6.12.[1]

Even if personnel records are kept pursuant to departmental regulations, the Air Force provides certain limitations on what can be admitted pursuant

---

[1] Appellant notes that her response and appeal were not offered into evidence as part of the Article 15, but she does not allege it was error.

to R.C.M. 1001. Article 15s that are properly maintained may be admitted if they are not over five years old. AFI 51-201, *Administration of Military Justice,* ¶ 8.13.2 (6 Jun 2013). This date is calculated from the date the commander notified the accused of the commander's intent to impose nonjudicial punishment to the date the charges were referred. This time limit does not apply if the Article 15 is offered as rebuttal evidence pursuant to R.C.M. 1001(d). *Id.*

In this case, the military judge admitted Appellant's Article 15 during the Government's presentencing case-in-chief. The Article 15 is dated 20 May 2009 and the charges were referred on 24 June 2015, a difference of 6 years, 1 month, and 5 days.

"For a waiver to be effective it must be clearly established that there was an 'intentional relinquishment or abandonment of a known right or privilege.'" *Harcrow*, 66 M.J. at 156 (quoting *Brookhart v. Janis,* 384 U.S. 1, 4 (1966)). We look to the record to determine whether Appellant affirmatively waived the admission of her prior Article 15. The CAAF established several criteria to consider when analyzing waiver. *See Campos*, 67 M.J. at 333; *Harcrow*, 66 M.J. at 157.

In *Harcrow*, the sheriff seized drug paraphernalia at the appellant's home and had the items tested. Trial counsel offered the lab reports at trial, at which point the military judge asked defense counsel, "have you seen [these reports]?" Defense counsel replied, "I have no objection, your honor." After sentencing but before the direct appeal was final, the United States Supreme Court issued its decision in *Crawford v. Washington,* 541 U.S. 36 (2004).[2] The court in *Harcrow* explained that counsel may waive a Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound. However, under the circumstances, "defense counsel's trial strategy could not be considered an intentional relinquishment or abandonment" of the appellant's right to confront lab personnel as it is impossible to abandon a right at trial that becomes available only after the trial. *Harcrow,* 66 M.J. at 158 (internal quotation omitted). Thus, there was no waiver and the court then analyzed the failure to object as a forfeiture, under the plain error rule, pursuant to Military Rule of Evidence (Mil. R. Evid.) 103(d). *Id.*

In *Campos*, the appellant challenged admission of a stipulation of expected testimony admitted under R.C.M. 1001(b)(5). 67 M.J. at 332. Because the ob-

---

[2] *Crawford* applied retroactively to *Harcrow* because *Whorton v. Bockting,* 549 U.S. 406 (2007), held that in *Crawford* the Supreme Court announced a "new rule" which under *Griffith v. Kentucky,* 479 U.S. 314 (1987), was retroactive for cases pending direct appeal (but not yet final on direct appeal). *Harcrow,* 66 M.J. at 157.

jection was not brought to the attention of the military judge, the court addressed the "threshold issue in this case as to whether [appellant] expressly waived the right to challenge the admissibility of [the witness's] expected testimony on appeal or merely forfeited the issue." *Id.* In analyzing that issue, the CAAF found "no question that defense counsel had advance notice of the substance of [the witness's] testimony, that he reviewed the expected testimony, and that he considered the impact of the stipulation on his client's case. At trial the military judge presented defense counsel with an opportunity to voice objections to the expected testimony and counsel responded that he had no objections." *Id.* at 333. The CAAF also considered that the appellant did not raise the issue of ineffective assistance of counsel on appeal. *Id.* Under those circumstances, the CAAF found waiver, and thus no error to review. *Id.*

"When taken together, these cases reveal five, non-exhaustive factors relevant to deciding whether a waiver has been clearly established and there is an intentional relinquishment or abandonment of a known right or privilege." *United States v. Velasquez,* No. Army 20110296, 2013 CCA LEXIS 291, at *9 (Army Ct. Crim. App. 9 Apr 2013) (unpub. op.) (internal quotation marks and citation omitted).[3] We find these factors substantially persuasive. The factors we now consider are: (1) whether the waiver was part of the defense's trial strategy; (2) whether the defense had knowledge of the proffered evidence and had time and opportunity to review it; (3) whether the defense was given an opportunity to object to the admissibility of the evidence; (4) whether the right was a known right or privilege at the time of the waiver; and (5) whether Appellant now raises ineffective assistance of counsel with regard to the issue of waiver.[4] *Id.*

The first factor is whether there was a "known right or privilege" at the time of the waiver. *Harcrow,* 66 M.J. at 156 (quoting *Brookhart*, 384 U.S. at 4). The court in *Velasquez* found, under circumstances somewhat similar to this case, that the right was "known or knowable" at the time of trial. *Velasquez,* 2013 CCA LEXIS 291, at *10. That case involved Army regulations for maintaining Article 15s, which had not been followed. *Id.* The prosecution offered an Article 15 older than the two-year retention period and a summarized Article 15, both of which were inadmissible under the Army regulation. The *Velasquez* court held "[t]he restrictions provided in R.C.M. 1001(b)(2) and [Army

---

[3] The CAAF denied review. *See United States v. Velasquez,* 72 M.J. 442 (C.A.A.F. 2013).

[4] *Velasquez* is not the only service court opinion to utilize the same factors. *See United States v. Rera*, No. Army 20090071, 2011 CCA LEXIS 70, at *5 (Army Ct. Crim. App. 7 Apr. 2011) (unpub. mem. op.); *see also United States v. Jenkins*, No. NMCCA 201100420, 2012 CCA LEXIS 679 (N-M. Ct. Crim. App. 10 May 2012) (unpub. op.).

Regulation] 27-10 are well established and have remained static for several years." *Id.*

R.C.M. 1001(b)(2) permits admission of certain personnel records that are kept in accordance with departmental regulations. This is not a new rule. It is based on paragraph 75 of the 1969 (Rev.) *Manual for Courts-Martial* (*MCM*) and the relevant sections have been essentially verbatim since 1984, including the language that any objections not asserted are waived. R.C.M. 1001(b)(1). In addition, the Air Force's five-year time limitation for admission of properly maintained Article 15s is not a new regulation. AFI 51-201, *Administration of Military Justice,* ¶ 8.13.2 (6 Jun 2013). Therefore, we conclude that the right to object to the six-year old Article 15 was a known right or privilege.

Second, we assess or analyze whether the waiver was part of the Defense's strategy. One component of the Defense's strategy was showing Appellant's rehabilitative potential. This was shown by highlighting the positive strides Appellant made after receiving her Article 15. Appellant included in her written unsworn statement that she was at a "low point" after receiving the Article 15, but she deployed and had a supervisor who helped her understand it was a rehabilitative tool. She then started to rehabilitate herself, and with the help of another supervisor, she worked on going from "a diamond in the rough" to "shin[ing]" and "reaching [her] potential" at work.

Defense argued at sentencing:

> She told you about the Article 15 she got. She didn't sugar-coat it. . . . But she had the opportunity to go and to deploy and she told you about some amazing mentors that she had when she was deployed. Amazing mentors who showed her, "You're so much more than the one black mark on your record and you can overcome this." And she did. You have several character letters from people that have great things to say about [the Appellant].

The Defense also argued Appellant showed rehabilitative potential immediately after the "issues with the weight tickets [i.e. the current charges]" when she was removed from her section. During that time, one supervisor wrote that Appellant "had been one of my go-to Airmen for any crucial high-visibility shipments." Another witness stated that "after she moved, I heard people say good remarks about her." Defense argued against a bad-conduct discharge because Appellant "has the opportunity to be rehabilitated." Based on those facts, we find that the waiver was a part of the Defense's strategy of arguing Appellant's rehabilitation potential.

The third factor is whether a defense counsel had knowledge of the proffered evidence and had time and opportunity to review it. Appellant acknowledged the Article 15 on 12 May 2009 with her signature. Appellant does not

now allege any discovery violations, and the record shows that Appellant had a copy of the Article 15 at sentencing when it was offered into evidence. As well, trial counsel announced the Article 15's date on the record. Accordingly, under the fourth factor, we find that Appellant had an opportunity to object to its admissibility but did not.

With regard to the fifth factor, based upon our assessment that the waiver was part of the Defense strategy, and in the absence of any appellate allegation of ineffective assistance of counsel, the record does not support a finding that Appellant is alleging trial defense counsel was ineffective by waiving the right to object to the admission of the Article 15.

Taken as a whole, the facts of this case establish that Appellant waived her right to challenge the admissibility of the Article 15. Furthermore, we find no reason to employ our authority under Article 66, UCMJ, to override her waiver, which leaves us with no error to review on appeal. *See United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016).

Assuming, *arguendo*, that we did not find a waiver and proceeded to analyze this case under plain error as a forfeiture of the right, Appellant still would not prevail. To establish plain error, Appellant must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011). The Article 15 and underlying charge of larceny were referenced in Appellant's 2009 enlisted performance report, and thus would have been before the military judge. During its sentencing argument, the Government did not belabor the facts of the nonjudicial punishment, but instead addressed the facts Appellant wrote about in her unsworn statement. Prior to trial, Appellant entered into a plea agreement with the Government, wherein she offered to plead guilty in consideration for the convening authority approving no term of confinement greater than five months if a bad-conduct discharge was adjudged, or seven months if no bad-conduct discharge was adjudged. The court sentenced her to a bad-conduct discharge and three months of confinement. Given the facts of the case, we do not believe that the court-martial would have adjudged a lesser sentence. Thus, Appellant falls short of establishing the requisite prejudice, and the admission of the Article 15 was not plain error.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court