# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

**UNITED STATES**

**v.**

**Technical Sergeant FLOYD M. JETER, JR.**
**United States Air Force**

**ACM 38511**

**__ M.J. __**

**1 July 2015**

Sentence adjudged 11 July 2013 by GCM convened at Seymour Johnson Air Force Base, North Carolina. Military Judge: Joshua E. Kastenberg.

Approved Sentence: Dishonorable discharge, confinement for 8 years, and reduction to E-1.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis and Frank J. Spinner, Esquire.

Appellate Counsel for the United States: Major Daniel J. Breen; Major Jeremy D. Gehman; Major Mary Ellen Payne; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

PUBLISHED OPINION OF THE COURT

ALLRED, Chief Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of making a false official statement, willfully damaging nonmilitary property, rape, and obstruction of justice, in violation of Articles 107, 109, 120, and 134, UCMJ, 10 U.S.C. §§ 907, 909, 920, 934.[1] The adjudged sentence included

---

[1] The appellant was found not guilty of a third specification of rape, assault consummated by a battery, and kidnapping, in violation of Articles 120, 128, and 134, UCMJ, 10 U.S.C. §§ 920, 928, 934.

a dishonorable discharge, confinement for 8 years, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the adjudged sentence except for the forfeitures.

Before us, the appellant argues (1) that the evidence is factually and legally insufficient to sustain his convictions, (2) his trial defense counsel were ineffective by failing to interview certain potential witnesses and failing to adequately impeach the two alleged rape victims, and (3) unlawful command influence so permeated the proceedings that it was impossible for him to receive a fair trial.[2] Finding no error prejudicial to the substantial rights of the appellant, we affirm.[3]

*Background*

In 2003, the appellant married a fellow Airman. While stationed together, the couple bought a house near Seymour-Johnson Air Force Base. By 2007, the two remained married but had separated, and the appellant was living alone in their house. In early December 2007, the appellant's wife visited him at their house, and they began to argue. When she attempted to leave, the appellant grabbed her by the hair, locked the front door, threatened to kill her while looking for his handgun and handcuffs, pushed her onto the living room floor, and forced her to have sexual intercourse while she cried and said no. For this incident, the appellant was convicted of raping his wife by using power sufficient that she could not avoid or escape the sexual conduct.

Despite this incident, the appellant and his wife sought to mend their relationship. In May 2008, they were at their house, and again began to argue. The appellant's wife fled the house, and when she returned in the company of a police officer, they discovered the appellant had put sugar in the gas tank of her car. For this, the appellant was convicted of willfully damaging nonmilitary property.

In March 2009, the appellant began a relationship with a female Airman. In September 2011, while the female Airman was staying at his home and pregnant with his child, they had an altercation. The appellant forced the Airman into a partially-filled bathtub, stripped an electrical cord to bare wires, and demanded that she hold the exposed wires. The Airman believed he was trying to drown and electrocute her. During the ensuing investigation, the appellant lied in a written statement by saying, "I have not in any way threatened or threatened the life of my girlfriend." This served as the basis for the false official statement conviction.

---

[2] The appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] It appears from the record that the military judge failed to announce that the court was assembled. *See* Rule for Courts-Martial (R.C.M.) 911 ("The military judge shall announce the assembly of the court-martial."). While assembly of the court-martial is significant for a variety of reasons, s*ee* R.C.M. 911, Discussion, in the present case, we find that the military judge's omission had no substantive effect upon the proceedings and was thus harmless.

On 3 August 2012, the appellant again argued with his Airman girlfriend. This led to an altercation in which the appellant threatened her with physical harm, shoved her against a wall so hard it broke the underlying sheetrock, and choked her with his forearm. He forcibly removed her clothes and compelled her to have sex on the floor of their bedroom despite her protests. He also forcibly penetrated her while she lay on the bed attempting to breastfeed their infant. During this incident, he locked the bedroom door and menaced her by slapping a metal pipe against his hand and running it over her body. For this incident, the appellant was convicted of rape by threatening or placing the Airman in fear that she would be subjected to death or grievous bodily harm.

While under investigation for the offenses involving his girlfriend, the appellant manufactured a false e-mail, purporting to be written by her and recanting allegations she had made against him. For this, the appellant was convicted of obstructing justice.

*Factual and Legal Sufficiency*

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). "The test for factual sufficiency is whether, after weighing the evidence . . . and making allowances for not having personally observed the witnesses, [we ourselves are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *Turner*, 25 M.J. at 325) (internal quotation marks omitted). "Proof beyond a reasonable doubt . . . does not mean that the evidence must be free of conflict." *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986).

The appellant argues the evidence is factually and legally insufficient to sustain any of his convicted offenses. In doing so, he alleges there are significant inconsistencies in the witnesses' testimony and repeats much of what he argued during findings at trial. After reviewing the record, weighing the evidence, and making allowances for not having personally observed the witnesses, we are personally convinced of the appellant's guilt beyond a reasonable doubt and find that a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. The evidence is therefore factually and legally sufficient to sustain the convictions. We now discuss in further detail our justification for sustaining the conviction for willfully damaging nonmilitary property.

*Damage to Nonmilitary Property*

Suspecting the appellant had put sugar in her vehicle's gas tank, his wife had her vehicle towed to an auto repair shop, where mechanics confirmed her suspicion. The

service manager of the repair shop testified that sugar forms a gel-like substance when mixed with gasoline.  If that substance passes through the vehicle's fuel injectors, they will stick and prevent the car from running.  The service manager testified that, at the time he removed the sugar from the vehicle's tank, there had not yet been any physical injury to the vehicle itself, as the gel-like substance had not moved out of the gas tank.  Until the sugar was removed, however, the vehicle could not be driven without causing physical injury to the vehicle.[4]  This raises the question whether sugar in the tank amounts to "damage" of the vehicle—nonmilitary property—within the meaning of Article 109, UCMJ.  We conclude that it does.

Under Article 109, UCMJ, a crime is committed when a servicemember "willfully or recklessly wastes, spoils, or otherwise willfully and wrongfully destroys or damages any property other than military property of the United States."  *Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 33.c.(2) (2012 ed.).  Through the *Manual*, the President has created two offenses within the ambit of Article 109, UCMJ, based on the type of property at issue:  the wasting or spoiling of real property and the destroying or damaging of personal property.  *MCM*, Part IV, ¶ 33.b.(1) and (2).

Relative to personal property, the *Manual* explains:  (1) "Damage consists of any *physical injury* to the property," and (2) "To be destroyed, the property need not be completely demolished or annihilated, but must be sufficiently *injured* to be useless for its intended purpose."  *MCM*, Part IV, ¶ 33.c.(2) (emphasis added).  We find this latter provision's reference to the property's use for its intended purpose helpful in interpreting the scope of the word "damage" in the present context.  By definition, "damage" encompasses "physical injury to the property," and we hereby construe "physical injury" to include the rendering of personal property at least temporarily useless for its intended purpose.  When reading these concepts together, for purposes of Article 109, UCMJ, we find that "damage" consists of any physical injury to the property, to include any change to the condition of the personal property that renders it, at least temporarily, useless for its intended purpose.

The foregoing analytical approach is not novel.  Our superior court conducted the same analysis and reached the same conclusion when using these same nonmilitary property provisions to define "damage" in the context of military property under Article 108, UCMJ, 10 U.S.C. § 908.  *See United States v. Ortiz*, 24 M.J. 164, 170-71 (C.M.A. 1987) (finding disengagement of an electrical relay in an anti-skid system on an F-15 aircraft constituted "damage," because it rendered the aircraft temporarily useless for flying missions); *United States v. Peacock*, 24 M.J. 410, 412 (C.M.A. 1987) (finding that placing foreign objects in military equipment so as to temporarily impair its operational readiness constituted "damage"); *United States v. Daniels*, 56 M.J. 365, 369 (C.A.A.F.

---

[4]  The cost of removing the sugar from the gas tank was $200.00.

2002) (holding that tampering with screws on a military aircraft's window was "damage" where it caused the premature termination of a flying mission).

Accordingly, we hold that the appellant's placing sugar in the vehicle's gas tank amounted to "damage" within the meaning of Article 109, UCMJ—as it changed the condition of the vehicle rendering it temporarily useless for its intended purpose. We therefore find the evidence factually and legally sufficient to prove the appellant willfully and wrongfully damaged the vehicle belonging to his wife.

*Effectiveness of Counsel*

The Sixth Amendment[5] guarantees the accused the "right to the effective assistance of counsel." *United States v. Cronic*, 466 U.S. 648, 654 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)) (internal quotation marks omitted). The appellant contends his trial defense counsel were ineffective by failing to interview certain potential witnesses and by failing to adequately impeach the two alleged rape victims.

We review such claims de novo under the standards and two-prong test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009); *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) this deficiency resulted in prejudice." *Green*, 68 M.J. at 361. "The burden on an appellant is heavy because counsel is presumed to have performed in a competent, professional manner." *United States v. Quick*, 59 M.J. 383, 386 (C.A.A.F. 2004). To overcome this presumption, an appellant must show specific defects in counsel's performance that were "unreasonable under prevailing professional norms." *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001).

The appellant declares via affidavit that he informed his trial defense counsel prior to trial about two individuals who could testify on his behalf at trial, but that his trial defense counsel failed to interview them. In a court-ordered affidavit, the appellant's trial defense counsel noted that both potential witnesses had told the defense paralegal that, although they were the appellant's roommates at the time of the alleged rape of his wife, neither man was at home when the incident happened and the two had no knowledge of the incident. Defense counsel explained that she decided not to call the individuals as witnesses due to their potentially negative impact: both lacked first-hand information about the incident, one individual had a domestic assault conviction, and the other individual had knowledge of certain information that would assist the government in its prosecution. The law presumes counsel's actions to be appropriate, and we will not

---

[5] U.S. CONST. amend. VI.

second-guess a trial defense counsel's reasonable strategic or tactical decisions. *See United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993). The decisions here were reasonable. We find the appellant has not demonstrated that his counsel's performance was deficient, and we further conclude that even if there were any deficiency it did not result in prejudice.

The appellant also contends his trial defense counsel failed to adequately attack the credibility of his wife and girlfriend during their cross-examinations. Upon careful review of the record, including the affidavits and other matters submitted on appeal, we find that trial defense counsel cross-examined and addressed the credibility of the women with zeal and professionalism. We find the appellant has failed to establish his counsel were deficient in this matter. Moreover, even were there deficiency, the appellant has failed to establish prejudice or a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.

*Unlawful Command Influence*

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the appellant argues that—due to the cumulative effect of comments made by the President of the United States, the Chief of Staff of the Air Force, a former Secretary of Defense, and other civilian and military leaders—unlawful command influence so permeated the Air Force at the time of his court-martial that he could not receive a fair trial. The appellant complains, in particular, that his trial was adversely affected by pretrial public comments from the Special Court-Martial Convening Authority. The appellant unsuccessfully raised this motion at trial.

Article 37(a), UCMJ, 10 U.S.C. § 837(a), states in relevant part: "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." Our review of this matter is "not limited to actual unlawful influence and its effect on this trial." *See United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006). The mere appearance of UCI may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (quoting *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)) (internal quotation marks omitted). We must also ensure there is no appearance of unlawful command influence. Our superior court has declared, "the appearance of unlawful command influence will exist where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *Lewis*, 63 M.J. at 415.

The burden of raising the issue of unlawful command influence rests with the defense. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). On appeal, "the

defense must (1) show facts which, if true, constitute unlawful command influence; (2) show that the proceedings were unfair; and (3) show that unlawful command influence was the cause of the unfairness." *Id.* To meet the threshold for raising this issue, trial defense counsel is required to present "some evidence" of unlawful command influence. *Id.* If the defense meets that burden to raise the issue, the burden shifts to the government, who must: "(1) disprove the predicate facts on which the allegation of unlawful command influence is based; (2) persuade the military judge that the facts do not constitute unlawful command influence; or (3) prove at trial that the unlawful command influence will not affect the proceedings." *United States v. Simpson*, 58 M.J. 368, 373 (C.A.A.F. 2003) (quoting *Biagase*, 50 M.J. at 151) (internal quotation marks omitted). "'Whichever tactic the Government chooses, the quantum of proof is beyond a reasonable doubt.'" *Id.* (quoting *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)).

Where, as here, the issue is litigated on the record at trial, the military judge's findings of fact are reviewed under a clearly erroneous standard, but the question of command influence flowing from those facts is a question of law that this court reviews de novo. *See United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999).

During voir dire, the military judge and counsel questioned the members at length concerning their ability to fairly and independently decide matters before them. The military judge gave the members detailed instructions and liberally granted challenges for cause to eliminate any taint of unlawful command influence. We have ourselves reviewed the entire record, including comments made by the officials in question and the members' responses during voir dire. The military judge's findings of fact are amply supported by the record and are not clearly erroneous. We need not address whether the defense met its initial burden of production of evidence, as the military judge found beyond a reasonable doubt—and we agree—that the statements at issue had no impact on the appellant's trial. We are convinced an objective, disinterested, reasonable member of the public, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the appellant's court-martial proceeding. *See Lewis*, 63 M.J. at 415.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. [6] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

---

[6] Charge V in this case alleges a violation of Article 134, UCMJ. The court-martial order (CMO) incorrectly describes Charge V as a violation of "Article 128." We order promulgation of a corrected CMO.

Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court