# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

### UNITED STATES

**v.**

### Senior Airman ZACHARY R. WALKER
### United States Air Force

### ACM 38645

### 2 December 2015

Sentence adjudged 18 January 2014 by GCM convened at Barksdale Air Force Base, Louisiana. Military Judge: Donald R. Eller, Jr.

Approved Sentence: Dishonorable discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Thomas A. Smith and William E. Cassara.

Appellate Counsel for the United States: Major Roberto Ramirez; Major Mary Ellen Payne; and Gerald R. Bruce.

Before

ALLRED, TELLER, ZIMMERMAN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

ZIMMERMAN, Judge:

At a general court-martial composed of officer and enlisted members, Appellant was convicted, contrary to his pleas, of sexual assault, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The court sentenced Appellant to a dishonorable discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged.

On appeal, Appellant makes five averments: (1) the finding of guilty is legally and factually insufficient; (2) the military judge abused his discretion by finding comments by the special court-martial convening authority amounted to apparent unlawful command influence (UCI) but would not affect the proceedings; (3) the military judge erred in denying a defense implied bias challenge against a court member; (4) the military judge erred by denying a motion for mistrial after trial counsel improperly commented on Appellant's right to remain silent; and (5) the Government violated the 120-day post-trial processing standard for convening authority action, warranting some sentencing relief. We disagree with the first four averments but find merit in the post-trial processing claim. Consequently, we hold the Government violated post-trial processing standards, warranting some sentencing relief. We affirm the finding and sentence, as reassessed.

*Background*

Appellant and Senior Airman (SrA) PS were coworkers who started dating at the end of June 2012. Several weeks into their relationship they agreed to slow down the fast pace at which their relationship was progressing emotionally and sexually; however, they continued to spend time together off-duty. On the evening of 4 August 2012, Appellant and SrA PS were at Appellant's apartment watching a movie and discussing the status of their relationship. They engaged in consensual fondling on Appellant's couch, but SrA PS was not comfortable with re-engaging in such acts, so she got off the couch to use the bathroom.

When she came out of the bathroom, Appellant was waiting on the bed and wanted to continue talking about their relationship. They lay on the bed talking for a short while, until Appellant began his sexual advances, causing SrA PS to try to get off the bed. SrA PS accused Appellant of forcefully grabbing her, removing her clothing, and engaging in sexual intercourse. Appellant was charged with, and pled not guilty to, one specification of rape and one specification of sexual assault, arising from this incident. He was found not guilty of rape, but guilty of sexual assault by grabbing her waist and penetrating her vulva with his penis.

Additional facts necessary to resolve the assignment of error are included below.

*Legal and Factual Sufficiency*

Appellant maintains on appeal that the Government failed to prove beyond a reasonable doubt that he sexually assaulted SrA PS. His multi-layer grievance includes assertions that it would have been physically impossible for Appellant to have penetrated SrA PS in the manner in which she described; SrA PS' testimony was inconsistent and false; and SrA PS was motivated to lie because she wanted a humanitarian transfer to an assignment near her parents. We disagree with Appellant's contentions that the finding of guilt is legally and factually insufficient.

Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are [ourselves] convinced of the [appellant's] guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. Our appellate review "involves a fresh, impartial look at the evidence," contained in the "entire record without regard to the findings reached by the trial court" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

We find the evidence legally and factually sufficient to support Appellant's conviction. The elements of the sexual assault offense are: (1) that Appellant committed a sexual act upon SrA PS, to wit: penetrating her vulva with his penis, and (2) that Appellant did so by causing bodily harm to SrA PS, to wit: grabbing her waist. *Manual for Courts-Martial, United States*, pt. IV, ¶ 45.a.(b)(1)(B) (2012 ed.).

Evaluating the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt, and the evidence is therefore legally sufficient. The allegation of penetration was supported by medical and DNA evidence indicating sexual intercourse between SrA PS and Appellant. The record also contains evidence supporting the allegation that the sex act was nonconsensual and SrA PS told Appellant to stop as he assaulted her. Contained in the record are SrA PS' text messages to Appellant reciting what she said to him during the assault and informing him that she did not want to see him anymore. Within hours of the incident, she wrote, "I said stop and u didnt. I said it hurt and u still didnt stop. Please dont talk to me anymore."

Appellant responded via text message, "I'm so sorry! I didn't know what to make of when you said that. I don['t] know what I was thinking. I didn't mean to hurt you… I just thought… Omg. I'm sorry." Appellant sent at least five more text messages into the early hours of the morning apologizing to SrA PS. One message read:

> Please believe that I never meant [to] hurt you. I don't know what the fuck I was thinking when you said to stop. I feel like such a low piece of shit. If nothing else, please let me apologize to you with my actual voice. [Please] understand that I didn't want to bring up anything from your past that would hurt you either. I'm fucking a horrible human being. I'm so sorry. I swear I'll do anything, no matter how long it

> takes, to try and make what I did right. I know I might never get there, but give me the chance, even though I'm undergoing, [sic] I really do love you and I feel like such a shit.

When SrA PS did not respond to Appellant's contrite text messages, he began to communicate via text message with a friend, telling the friend that he was "not too terribly good," he had "hurt someone and now [he] feel[s] like crap," and he had "ruined someone's faith in [him] and [he] did it in the worst possible way." Additionally, at trial Appellant testified and was cross-examined by trial counsel on the meaning of the text messages to the friend. Appellant explained that the comment about ruining SrA PS's faith in Appellant "in the worst possible way" related to SrA PS telling Appellant she had previously been raped. Trial counsel then asked, "And that's what you felt like you had done to her?" Appellant responded, "Yes, sir." Taken as a whole, SrA PS's testimony along with other evidence presented could reasonably be considered credible and convincing.

Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are personally convinced of Appellant's guilt. Appellant's conviction on the charge and specification is both legally and factually sufficient.

*Unlawful Command Influence*

Appellant argues the military judge erred in ruling that the proceedings would not be affected after finding some evidence of apparent UCI in the Special Court-Martial Convening Authority's (SPCMCA) comments. We disagree with this contention.

After the sexual assault but prior to Appellant's trial, the military installation held a sexual assault prevention and response event on 21 June 2013, during which the installation commander spoke to a large population of the base. This commander also served as the SPCMCA in this case. During his presentation, the SPCMCA commented on five pending cases that were rapes and "egregious, terrible cases," and he stated they were doing all they could to prosecute these types of cases.

The military judge found some evidence of apparent UCI in the SPCMCA's comments and determined the burden had shifted to the Government, citing to *United States v. Biagase*, 50 M.J. 143 (C.A.A.F. 1999). As a result of his initial finding of some evidence of UCI, the military judge permitted the parties to conduct in-depth voir dire of all court members on the topic of sexual assault in the military in general, as well as specifically on the comments of the SPCMCA and other senior leaders; however, the judge did not dismiss the case at that time, as urged by the defense. After thorough questioning of the members and exercise of challenges and excusals, the military judge ruled the Government had met its *Biagase* burden beyond a reasonable doubt and denied the defense motion to dismiss.

Article 37(a), UCMJ, 10 U.S.C. § 837(a), states in relevant part: "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." Our review of this matter is "not limited to actual unlawful influence and its effect on this trial." *See United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006). The mere appearance of UCI may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (quoting *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)) (internal quotation marks omitted). With regard to appearance of unlawful command influence, our superior court has declared, "the appearance of unlawful command influence will exist where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *Lewis*, 63 M.J. at 415.

The defense bears the burden of raising the issue of unlawful command influence. *Biagase*, 50 M.J. at 150. On appeal, "the defense must (1) show facts which, if true, constitute unlawful command influence; (2) show that the proceedings were unfair; and (3) show that unlawful command influence was the cause of the unfairness." *Id.* To meet the threshold for raising this issue, the defense is required to present "some evidence" of unlawful command influence. *Id.* If the defense meets that burden, it shifts to the government, who must: "(1) disprove the predicate facts on which the allegation of unlawful command influence is based; (2) persuade the military judge that the facts do not constitute unlawful command influence; or (3) prove at trial that the unlawful command influence will not affect the proceedings." *United States v. Simpson*, 58 M.J. 368, 373 (C.A.A.F. 2003) (quoting *Biagase*, 50 M.J. at 151) (internal quotation marks omitted). "'Whichever tactic the Government chooses, the quantum of proof is beyond a reasonable doubt.'" *Id.* (quoting *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)).

"Where, as here, the issue is litigated on the record at trial, the military judge's findings of fact are reviewed under a clearly erroneous standard, but the question of command influence flowing from those facts is a question of law that this court reviews de novo." *United States v. Jeter*, 74 M.J. 772, 778 (A.F. Ct. Crim App. 2015), *pet. rev. denied*, __ M.J. __ No. 15-0774 (Daily Journal 19 October 2015).

This Court has reviewed the entire record, including comments made by the SPCMCA, the panel members' responses during voir dire, and the resulting challenges and excusal of members. The military judge's findings of fact are supported by the record and are not clearly erroneous. We are convinced an objective, disinterested, reasonable member of the public, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of Appellant's court-martial proceeding. *See id.*

*Implied Bias Challenge against Staff Sergeant MD*

Similar to voir dire of the other panel members, Staff Sergeant (SSgt) MD was questioned about reports, briefings, training, and other commentary on sexual assault in the military. He had participated in mass briefings on sexual assault and believed the message conveyed in the briefings was to not engage in sexual assault. Taking into account what he had heard about sexual assault, he felt he could give Appellant a fair and impartial trial. In response to counsel's questions, SSgt MD further expounded that while sexual assault had never been "okay," it appeared the Air Force was "going to a different outlook on how sexual assault is perceived" in terms of increased awareness and decreasing the numbers of sexual assaults. When asked to explain his understanding of the current Air Force outlook, he stated:

> . . . I guess they were just wanting to knock down the amount of sexual assaults that are happening in the Air Force. So I took it as—you know—we need to be more aware of it, because it's happening more and more. So it's just like—you know—you never see roaches in the house but you have them . . . you want to stomp them out, so when you finally see one you need to let everybody else know to clean up so we don't have them.

Upon further probing by trial defense counsel on SSgt MD's perception that more sexual assaults were occurring than in the past, SSgt MD clarified that the statistics showed an increase from year to year, but he didn't know if they were confirmed cases, or just allegations, understanding the difference between mere allegations and convictions.

Following group and individual voir dire, trial defense counsel challenged SSgt MD for cause based on implied bias. The military judge articulated the implied bias standard and was mindful of the liberal grant mandate in denying the challenge. In analyzing the defense's challenge, the military judge expressed:

> The defense also challenged [SSgt MD] on the implied bias standard, indicating that because he was aware or had been— received some training on the issue of an increase in sexual assaults, which in context was how the issue of roaches was broached, in that the topic was raised—it brought an awareness to him that even if you don't see it, one may have roaches in their house. And if there was a comment about stamping out, it was in that context. There was no indication that he had prejudged this case, or had any inability to not be fair.

ACM 38645

At trial Appellant did not exercise a peremptory challenge against SSgt MD or any other member at trial, but now requests this court set aside and dismiss the finding and sentence because the military judge erred in denying the for-cause challenge against this member.

A court member should be excused for cause when it appears he "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." Rule for Courts-Martial (R.C.M.) 912(f)(1)(N). When counsel unsuccessfully challenge a member for cause, "failure by the challenging party to exercise a peremptory challenge against any member shall constitute waiver of further consideration of the challenge upon later review." R.C.M. 912(f)(4). Because Appellant did not use his peremptory challenge to remove SSgt MD or any other member when called upon to do so, any error as to SSgt MD was waived. Accordingly, we will not address the merits of Appellant's claim that the military judge erred by not granting the for cause challenge of SSgt MD. *See United States v. Leonard*, 63 M.J. 398, 403 (C.A.A.F. 2006) (holding the appellant waived any error under R.C.M. 912(f)(4) and the court did not address merits of his claim of error).

*Motion for Mistrial*

Appellant asserts the military judge erred by denying a motion for mistrial after trial counsel improperly posed a question in the presence of the court members regarding Appellant's invocation of his right to remain silent during his interview with investigators. We hold the military judge did not err.

The lead agent from the Air Force Office of Special Investigations (AFOSI) testified during the Government's case-in-chief. In response to trial defense counsel's cross-examination questions, the agent agreed Appellant went to the AFOSI detachment willingly, agreed to talk to the agent and his co-interviewer, and provided information in response to the agents' questions. The agent also agreed that questions he posed to SrA PS in her interview were "based on what [the agent] learned during [his] interview [with Appellant] and what [Appellant] had been forthcoming in telling [the agent]."

On redirect examination, trial counsel asked, "on cross you testified that you interviewed the Accused?" to which the agent responded yes. Then, trial counsel asked, "At some point in his interview the Accused invoked his right to remain silent?" which prompted an immediate objection from trial defense counsel before the witness could respond to the question. The military judge declared, "Members, I'm going to tell you this right now. This whole conversation over the Accused's interview, it's not before you at this stage and his invocation of rights cannot be considered in any way, shape or form."

In the ensuing session outside the presence of the members, trial defense counsel moved the court to declare a mistrial because of trial counsel's inappropriate comment on the invocation of Appellant's right to remain silent. In justification of the question on

Appellant's invocation of his right to remain silent, trial counsel reasoned that Appellant's counsel had opened the door to such questioning because their cross-examination of the agent implied that Appellant had been fully forthcoming and freely cooperative in his interview, when he was not. Notwithstanding this rationale, trial counsel requested the military judge give a curative instruction to the members when they re-entered the courtroom and to restate the instruction before the members deliberated on findings.

The military judge denied the motion for a mistrial, finding no bad faith or intent by Government's counsel, and instructed the members as follows:

> Members, when we took that 39(a), I had just sustained a defense objection as to an improper question by the Government. Let me just remind you of a couple of things. The Accused in this case, Airman Walker, has an absolute right to remain silent at all times. You will not draw any inference adverse to him from any comment or question made by trial counsel that might suggest that he invoked his right to remain silent. You are directed to disregard any comment or question by trial counsel that may have alluded to that idea. You may not hold that against him in any way for any reason, or speculate as to that matter. You are not permitted to consider that he may or may not have exercised his absolute right to remain silent at any time as evidence for any purpose.

> As members of this court, the expectation is that you are going to follow the law as I instruct you and that's the law of the land; an absolute constitutional right. . . . [S]o I'm going to ask each of you individually whether you will be able to follow that instruction and disregard completely. It has to be completely wiped out of your mind as though it never happened. Now, and when you get back into deliberations, it is as though it never happened.

The military then polled each member individually on whether he or she could follow the judge's instruction, to which each member replied yes. Then prior to deliberations, the military judge again instructed the members to disregard the trial counsel's improper question, stating essentially the same cautionary language he provided earlier in the trial.

A military judge "may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising

during the proceedings which cast substantial doubt upon the fairness of the proceedings." R.C.M. 915(a). "[A] mistrial is an unusual and disfavored remedy. It should be applied only as a last resort to protect the guarantee for a fair trial." *United States v. McFadden*, 74 M.J. 87, 89 (C.A.A.F. 2015) (quoting *United States v. Diaz*, 59 M.J. 79, 90 (C.A.A.F. 2003)) (internal quotation marks omitted) (alteration in original). "It is reserved for only those situations where the military judge must intervene to prevent a miscarriage of justice." *Id*. (quoting *United States v. Vazquez*, 72 M.J. 13, 19 n.5 (C.A.A.F. 2013)) (internal quotation marks omitted).

"Because of the extraordinary nature of a mistrial, military judges should explore the option of taking other remedial action, such as giving curative instructions." *United States v. Ashby*, 68 M.J. 108, 122 (C.A.A.F. 2009). A curative instruction is preferred to granting a mistrial, which should only be granted "when 'inadmissible matters so prejudicial that a curative instruction would be inadequate are brought to the attention of the members.'" *Diaz*, 59 M.J. at 92 (quoting R.C.M. 915(a), Discussion). "We will not reverse a military judge's determination on a mistrial absent clear evidence of an abuse of discretion." *Ashby*, 68 M.J. at 122. "In determining whether the military judge abused his discretion by not granting a mistrial, we look to the actual grounds litigated at trial." *McFadden*, 74 M.J. at 90.

In asking the question whether Appellant invoked his right to remain silent during the AFOSI interview, trial counsel intended to rebut what they perceived as misleading facts presented by the defense. The military judge did not find bad faith by the Government; however, he found the question sufficiently improper that he needed to cure it through member instructions. The military judge instructed the members three times during the trial that they could not consider the trial counsel's question about whether Appellant invoked his right to remain silent, and the judge affirmatively obtained individual confirmation from all members that they could follow that instruction. "Absent evidence to the contrary, court members are presumed to comply with the military judge's instructions." *United Stated v. Thompkins*, 58 M.J. 43, 47 (C.A.A.F. 2003). Here, there is no evidence to the contrary. Therefore, the curative instructions and polling of the members was adequate to address the trial counsel's improper question, and the military judge did not abuse his discretion by denying the motion for mistrial.

### Post-trial Processing Delay

Appellant argues his sentence should be reduced to confinement for 6 months because the convening authority took action on his case 201 days[1] after the conclusion of trial.

---

[1] Appellant's calculation of 201 days was based on a trial end date of 17 January 2014; however, trial actually ended on 18 January 2014.

Appellant's trial ended on 18 January 2014, and the convening authority took action 200 days later on 6 August 2014. The court reporter's chronology indicated she was "involved in other activities, on leave, and out sick" from the end of the trial up to her resignation on 25 April 2014.

A week after trial ended the base legal office requested transcription assistance, and they received such assistance over the next two months. The auxiliary court reporters returned the transcribed material to the base office throughout February and March; however, the base legal office did not consolidate the material until 20 March 2014. During the following 24 days, from 21 March to 13 April 2014, the court reporter's chronology shows no activity on Appellant's record of trial. Then beginning 14 April 2014, legal office personnel conducted almost daily review and correction of the transcript over the next several weeks, and the military judge authenticated the record on 20 May 2014.

We review de novo Appellant's claim that his due process rights were violated due to post-trial delay. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citing *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004); *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003)). Where the convening authority's action is not taken within 120 days of the end of trial, we apply a presumption of unreasonable delay; however, "[t]he Government can rebut the presumption by showing the delay was not unreasonable." *Moreno*, 63 M.J. at 142.

In this case, 200 days lapsed from the end of trial to convening authority action; therefore, we presume unreasonable delay. We thus considered the remaining factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), including the reasons for the delay, Appellant's assertion of the right to timely review, and prejudice. *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004)).

Regarding the reasons for the delay, the 200-day processing time included reassignment of the audio recordings to other court reporters for transcription and the court reporter's resignation on 25 April 2014. We also considered the complexity of the record, the offense involved, the requirement for the staff judge advocate and convening authority to address complex legal issues presented in clemency, and the lack of evidence of malicious delay.

We found the reasons for the delay from end of trial to legal office review of the transcript was not adequately explained. Specifically, the chronology contains a two-month gap during which the record shows little to no action taken by the detailed court reporter or legal office personnel to review the transcribed material received from the supporting court reporters. The record is devoid of explanation for the Government's inaction during the two-month delay, except for a perfunctory statement that the court reporter was "involved in other activities" when she was not on leave or sick, as well as "unforeseen circumstances" preventing the court reporter from transcribing or reviewing

the transcript. We considered that the court reporter resigned on 25 April 2014; however, the resignation occurred months after the end of trial, and the Government provided no accounting for the lack of movement on the transcript during lengthy periods prior to her resignation.

Having found this two-month period was not fully accounted for within the 200-day processing time, we balanced these factors with any evidence of prejudice and demand for timely review. Appellant did not demand timely review, but argues that given the length of confinement, he was prejudiced because his opportunity to have his case heard by this court was "seriously prolonged." On this point, we find Appellant asserted four other assignments of error and was not meritorious on those grounds; therefore he "is in no worse position due to the delay, even though it may have been excessive." *See Moreno*, 63 M.J. at 139. We also considered the length of time for appellate defense counsel to conduct a thorough review of the record and file assignment of errors in relation to the approved confinement of 18 months and are unable to determine any prejudice as the result of oppressive incarceration.

Accordingly, after balancing all *Barker* factors, we find no violation of Appellant's due process right to speedy post-trial review for the 200 days between the completion of trial and convening authority's action.

Lastly, we review Appellant's request for relief pursuant to *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002). Under Article 66(c), UCMJ, this court is empowered "to grant relief for excessive post-trial delay without a showing of actual prejudice within the meaning of Article 59(a), if it deems relief appropriate under the circumstances." *Id.* at 224 (quoting *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000)) (internal quotation marks omitted). In *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006), our superior court held that a service court may grant relief even when the delay was not "most extraordinary." The court held "[t]he essential inquiry remains appropriateness in light of all circumstances, and no single predicate criteria of 'most extraordinary' should be erected to foreclose application of Article 66(c), UCMJ, consideration or relief." *Id.*

We find such relief appropriate in this case. In so doing, we considered the list of factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), with no single factor being dispositive. Here, the delay exceeded the *Moreno* standard by 80 days, and although there is no evidence of bad faith or institutional neglect, the Government could not explain the two-month delay in processing the transcript. We did not find any good justification in the record for completely suspending review of already transcribed material while Appellant awaited opportunity to submit his case for clemency and appellate review. Under the facts of this case, we find we may grant meaningful relief and hereby reassess the sentence.

Appellant's sentence is inappropriately severe due to the Government's delay in processing the case for convening authority action. Therefore, we find the following sentence is appropriate: a dishonorable discharge, confinement for 16 months, forfeiture of all pay and allowances, and reduction to E-1.

*Conclusion*

The approved finding and sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ. Accordingly, the approved finding and sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

ACM 38645