# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 40690**

_____

**UNITED STATES**
*Appellee*

**v.**

**Giorgio A. SZABO**
Lieutenant Colonel (O-5), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 23 April 2026

_____

*Military Judge*: Charles E. Wiedie (arraignment); Pilar G. Wennrich (motions); David M. Cisek (motions); Dayle P. Percle.

*Sentence*: Sentence adjudged 3 May 2024 by GCM convened at Joint Base Andrews, Maryland. Sentence entered by military judge on 17 June 2024: Dismissal, confinement for 4 months, and a reprimand.

*For Appellant*: Lieutenant Colonel Allen S. Abrams, USAF; Lieutenant Colonel Luke D. Wilson, USAF; Captain Joyclin N. Webster, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Major Jocelyn Q. Wright, USAF; Captain Donnell D. Wright, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEARLEY, and MORGAN, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Judge KEARLEY and Judge MORGAN joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

JOHNSON, Chief Judge:

The military judge found Appellant guilty, in accordance with his pleas pursuant to a plea agreement, of two specifications of wrongfully disobeying an order on divers occasions, in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892; one specification of wrongfully damaging non-military property of a value of less than $1,000.00, in violation of Article 109, UCMJ, 10 U.S.C. § 909; one specification of wrongfully using cocaine on divers occasions and one specification of wrongfully possessing anabolic steroids, both in violation of Article 112a, UCMJ, 10 U.S.C. § 912a; and one specification of fraternization, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1] A general court-martial composed of officer members sentenced Appellant to a dismissal, confinement for four months, and a reprimand. The convening authority approved the entire sentence; deferred automatic forfeitures of pay and allowances until the entry of judgment; waived automatic forfeitures of pay for four months or until Appellant's release from confinement, whichever was sooner, for the benefit of Appellant's child; and provided the language for the reprimand.

Appellant raises four assignments of error on appeal: (1) whether the military judge abused her discretion by overruling a defense objection to a portion of the victim's unsworn statement; (2) whether the military judge abused her discretion by accepting Appellant's plea of guilty to damaging non-military property because matters in the record raised a substantial question regarding Appellant's specific intent to commit the offense; (3) whether Appellant's sentence to a dismissal is inappropriately severe; and (4) whether the record of trial is incomplete and should be remanded for correction.[2] In addition, we address two additional issues not raised by Appellant: (5) whether Appellant's plea of guilty to damaging a door was improvident because the door constituted real property rather than personal property; and (6) whether Appellant is entitled to relief for appellate delay.

We have carefully considered issue (4) and find it does not warrant discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). As to issue (5), we find Appellant's plea of guilty to damaging non-military property was improvident in part, and we modify the findings and reassess the sentence accordingly. In light of our resolution of issue (5), we do not address issue

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant personally raises issues (3) and (4) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

(2). As to the remaining issues, we find no error materially prejudicial to Appellant's substantial rights.

## I. BACKGROUND

In early 2018, Appellant was a pilot stationed at Joint Base (JB) Andrews, Maryland. Around that time, Appellant noticed AC at the base fitness center. He initiated a conversation with AC and learned she was an enlisted member also stationed at JB Andrews, although assigned to a different squadron than Appellant.

Appellant and AC began dating in approximately May 2018, and continued an on-and-off romantic and sexual relationship until approximately November 2021. During this time they maintained separate residences, but they frequently stayed the night at each other's homes, and each of them had access to the other's residence. Appellant and AC were introduced to members of each other's families. Multiple enlisted members of Appellant's squadron also became aware of the relationship; Appellant personally asked these individuals not to reveal his relationship with AC to anyone.

In 2019, Appellant became AC's social media "brand manager" and operated commercial Internet and social media accounts in her name. Appellant arranged for professional photographers to create content for these platforms, which included many images of AC in various states of undress. Appellant provided all the proceeds from these activities to AC, who received approximately $40,000.00 from them in a period of four months.

In September 2019, Appellant told AC he wanted to try cocaine. Appellant used cocaine on multiple occasions between October 2019 and August 2022. AC would later tell the Air Force Office of Special Investigations (OSI) that she observed Appellant use cocaine more than 100 times. During the military judge's guilty plea inquiry, Appellant stated he used cocaine "several" times, that 80 percent of his use occurred during the COVID pandemic between early 2020 and the summer of 2021, and that he used cocaine "most frequently" during the summer and fall of 2020. AC told OSI that Appellant would use cocaine in public and around other people, but he would not use cocaine when he was on flying missions, using flight simulators, or around his family. Appellant's text communications with AC contained multiple references to his desire and intent to use cocaine.

On one occasion during Appellant's relationship with AC, he went to and entered her home to find that she was not there. Appellant got into an argument with AC on the phone. Appellant became angry and punched a hole in the surface of a door inside her house with his fist. Appellant later paid AC $100.00 to repair the door. On another occasion, Appellant got into an

argument with AC while they were drinking wine in AC's kitchen. Appellant became frustrated and struck the wine glasses and bottle with his arm, knocking them onto the floor where they shattered. These incidents formed the basis for the charge of damaging non-military property.

Beginning in March 2022, after their final breakup, Appellant left AC 22 voice mail messages and sent her hundreds of text messages. On 10 June 2022, Appellant's squadron commander issued him a written order not to contact AC, who by that time had transferred to a different Air Force base. Between 10 June 2022 and 8 October 2022, Appellant violated this order several hundred times by contacting AC by email, text message, phone call, and social media.

On 26 August 2022, Appellant provided two urine samples for a urinalysis. Both samples subsequently tested positive for the metabolite of cocaine. During a search of Appellant's residence, OSI agents collected a makeup container and plastic bag containing a white powdery substance and a plastic straw with a white powdery residue. Subsequent testing identified the white powder as cocaine. During this same search of Appellant's residence, OSI agents also found several types of anabolic steroids, which were Schedule III controlled substances.

On 12 September 2022, Appellant's squadron commander issued him a military protective order (MPO) which directed Appellant, *inter alia*, not to contact AC. Between 12 September 2022 and 15 June 2023, Appellant violated the MPO dozens of times by contacting AC by text message and social media.

## II. DISCUSSION

### A. Victim's Unsworn Statement

#### 1. Additional Background

The Article 109, UCMJ, offense of which Appellant was found guilty alleged, in pertinent part, that "between on or about 1 June 2019 and on or about 30 August 2022," Appellant "willfully and wrongfully damage[d] a door by punching [it] with his fist and a bottle and two [wine] glasses by slamming [them] against a counter with his hand, the amount of said damage being in the sum of less than $1,000.00 . . . ." The Article 134, UCMJ, offense of which Appellant was found guilty alleged, in pertinent part, that "between on or about 1 May 2018 and on or about 14 February 2022," Appellant "knowingly fraternized with [AC by] engaging in a romantic relationship with [AC]," in violation of a custom of the Air Force, "to the prejudice of good order and discipline in the armed forces."

During presentencing proceedings, as a victim of Appellant's offenses, AC presented an unsworn statement to the court members both orally and in

writing pursuant to Rule for Courts-Martial (R.C.M) 1001(c). Shortly after she began reading her unsworn statement to the court members, trial defense counsel objected and asked for an Article 39(a), UCMJ, 10 U.S.C. § 839(a), hearing outside the presence of the court members. After the members departed the courtroom, trial defense counsel requested a 15-minute recess to discuss potential defense objections to AC's statement with trial counsel and AC's counsel. The military judge allowed the recess.

When the Article 39(a), UCMJ, hearing resumed, trial defense counsel told the military judge, "I think we're in agreement on all but one paragraph." Trial defense counsel then objected to the following portion of AC's statement:

> On other occasions during our relationship, you took your anger out on my personal vehicle and on a rental vehicle I was using after you damaged my personal vehicle. You left dents on the top of my car with your fists, broke my steering wheel by repeatedly punching it, slashed my tire with a steak knife. You also punched and cracked the windshield of the rental vehicle that was loaned out to me. The repairs for this damage led to an increase in my insurance premium.

This paragraph referred to incidents of alleged conduct by Appellant that were not part of the stipulation of fact or otherwise presented as evidence in the court-martial. Trial defense counsel first argued that with respect to this alleged conduct, "there's no timeline or other context that situates this as being properly part of a continuing course of conduct." Trial defense counsel then argued the Defense's "bigger objection" was that these assertions should be excluded under Military Rule of Evidence (Mil. R. Evid.) 403. Trial defense counsel argued, *inter alia*, the Defense's ability to rebut these allegations was limited due to a lack of notice and information about them, and that this uncharged misconduct was "much more inflammatory" than the charged damage described in the stipulation of fact to which Appellant pleaded guilty.

In response, the military judge advised the Defense that Mil. R. Evid. 403 did not apply to AC's unsworn statement, and suggested trial defense counsel address how, if at all, the statement was improper under R.C.M. 1001(c). The military judge then turned to AC's counsel, who argued the paragraph in question was a permissible demonstration of a continuing course of conduct related to the charge of damaging property, citing *United States v. Goldsmith*, No. ACM 40148, 2023 CCA LEXIS 8, at *20 (A.F. Ct. Crim. App. 11 Jan. 2023) (unpub. op.). AC's counsel argued these incidents "show[ed] that when [Appellant] gets upset he has destroyed or damaged [AC's] property and that she has incurred both emotional as well as pecuniary impacts due to his actions."

The military judge then returned to trial defense counsel, who argued these allegations in the unsworn statement did not "legitimately constitute[ ] a continuing course of conduct" because they were "far worse" than the charged property damage and were not situated in time in relation to the charged misconduct.

The military judge then overruled the defense objection. She explained:

> I do find under the applicable rights of alloc[u]tion of a victim in an unsworn statement, that this reasonably falls within the scope of both [the] destruction [sic] of property specification or continuing course of conduct and/or the fraternization specification. Understanding you have the ability to rebut statements within the unsworn or certainly argue the weight or admis – the weight, if any, to be given to these statements. The [D]efense's arguments tend to go more to how much weight, if any, should be given but not their admissibility under [R.C.M.] 1001(c).

AC then read her entire unsworn statement to the court members, who also received a written version.

The military judge later provided the court members a limiting instruction specifically addressing the uncharged misconduct AC referred to in her unsworn statement:

> In her unsworn statement, [AC] made reference to conduct of [Appellant] other than that – other than what he stands convicted of. While that was permissible for her to comment on during her right of allocution, you may not consider this uncharged conduct evidence to consider or impose more severe punishment on account of the uncharged conduct, or that [Appellant] had a criminal propensity, or consider that the value of the other alleged damaged property should affect [Appellant's] sentence. Although you must give due consideration to all matters properly before you, you must bear in mind [Appellant] is to be sentenced only for the offenses of which he has been found guilty.

### 2. Law

We review a military judge's ruling with regard to the presentation of a victim's unsworn statement for an abuse of discretion. *United States v. Harrington*, 83 M.J. 408, 418 (C.A.A.F. 2023). "Abuse of discretion occurs when the military judge: (1) bases a ruling on findings of fact that are not supported by the evidence; (2) uses incorrect legal principles; (3) applies correct legal principles in a clearly unreasonable way; or (4) does not consider important facts." *United States v. Ramirez*, 84 M.J. 173, 176 (C.A.A.F. 2024) (citation omitted). "Generally, military judges are, of course, granted a wide degree of deference

when making discretionary decisions during trial." *Id.* "To find abuse of discretion requires more than a mere difference of opinion—the challenged ruling must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *Id.* (quoting *United States v. Jasper*, 72 M.J. 276, 279–80 (C.A.A.F. 2013)) (additional citation omitted).

"When a military judge has abused [her] discretion in rejecting objections to a victim's unsworn statement, the Court will grant relief only if the Court is persuaded that the improper portion of the victim impact statement 'substantially influenced the adjudged sentence.'" *United States v. Campos*, 85 M.J. 310, 314 (C.A.A.F. 2025) (quoting *United States v. Hamilton*, 78 M.J. 335, 340 (C.A.A.F. 2019)). We apply four factors to assess the prejudicial effect of an improper unsworn statement: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* (internal quotation marks omitted) (quoting *Hamilton*, 78 M.J. at 343).

R.C.M. 1001(c) provides that the victim of an offense of which the accused has been found guilty may present an unsworn statement to the court-martial—orally, in writing, or both—addressing victim impact or matters in mitigation. "[V]ictim impact includes any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001(c)(2)(B).

"[U]nsworn victim statements are not made under oath, and thus are not evidence," and therefore are "not subject to the Military Rules of Evidence." *United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021). However, "the military judge has an obligation to ensure the content of a victim's unsworn statement comports with the parameters of victim impact or mitigation as defined by R.C.M. [1001(c)]." *Id.* (citation omitted).[3]

Our superior court has held that evidence of uncharged misconduct "involving the same or similar crimes, the same victims, and a similar situs" as charged offenses may demonstrate the true impact of the charged offenses, and therefore constitute proper evidence in aggravation "directly related to the conduct for which appellant was found guilty." *United States v. Mullens*, 29 M.J. 398, 400 (C.M.A. 1990); *see also United States v. Nourse*, 55 M.J. 229, 232 (C.A.A.F. 2001) ("[W]hen uncharged misconduct is part of a continuous course of conduct involving similar crimes and the same victims, it is encompassed

---

[3] *Tyler* addressed an earlier version of the Rules for Courts-Martial wherein a victim's unsworn statement was governed by R.C.M. 1001A, *see Manual for Courts-Martial, United States* (2016 ed.), the relevant provisions of which are substantially similar to the version of R.C.M. 1001(c) in effect at Appellant's court-martial.

within the language 'directly relating to or resulting from the offenses of which the accused has been found guilty' under R.C.M. 1001(b)(4).")." However, in *United States v. Campos*, the United States Court of Appeals for the Armed Forces (CAAF) "decline[d] to extend the holding of *Mullens* with respect to evidence in aggravation under R.C.M. 1001(b)(4) . . . to apply to victim impact statements under R.C.M. 1001(c)." 85 M.J. at 316. In *Campos*, the CAAF held the military judge abused his discretion by allowing the victim to accuse the appellant of uncharged misconduct in her unsworn statement. *Id.*

### 3. Analysis

Appellant contends the military judge abused her discretion by permitting AC to refer to uncharged misconduct by Appellant in her unsworn statement. He contends this error resulted in material prejudice, and asks this court to set aside the adjudged dismissal. The Government contends the military judge did not err in allowing the challenged paragraph because it was directly related to the fraternization offense, and in the alternative, any error did not materially prejudice Appellant.

As an initial matter, we note that on appeal Appellant challenges not only the paragraph quoted above, but another section of the unsworn statement that refers to Appellant entering AC's residence without permission, "trash[ing]" her house, breaking a kitchen cabinet, and throwing glassware into her backyard. We agree with the Government that Appellant waived his objection to this portion of the unsworn statement. The military judge granted trial defense counsel a 15-minute recess to discuss potential objections with trial counsel and AC's counsel. Trial defense counsel informed the military judge that counsel were "in agreement on all but one paragraph," and that the Defense was objecting only to the paragraph alleging damage to AC's vehicles as quoted above. We find the Defense affirmatively waived objections to the remainder of the unsworn statement, leaving no error to correct on appeal. *See United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020).

Turning to the preserved objection to the paragraph quoted above, counsel and the military judge evidently approached this issue with a view of the law that was understandable at the time, but incorrect in hindsight. Specifically, AC's counsel cited this court's unpublished opinion in *Goldsmith* which applied the "continuous course of conduct" theory of evidence in aggravation from cases such as *Mullens* and *Nourse* to unsworn victim statements under R.C.M. 1001(c). *See Goldsmith*, unpub. op. at *19–22. For their part, trial defense counsel did not challenge the applicability of the "continuous course of conduct" rationale to unsworn statements in principle, but argued it did not fit in this particular case due to uncertainty in the timeline and the relative severity of the alleged misconduct. The military judge overruled the defense objection, *in part* because of a continuing course of conduct with the Article 109, UCMJ,

offense. However, in *Campos*, decided after Appellant's court-martial, the CAAF specifically rejected the application of the *Mullens* and *Nourse* continuous course of conduct rationale to a victim's unsworn statements under R.C.M. 1001(c). 85 M.J. at 316.

Nevertheless, applying the deferential abuse of discretion standard of review, we find the military judge did not err in finding the challenged portion of the unsworn statement was permissible because it fell "within the scope" of the fraternization offense. That specification alleged Appellant engaged in a romantic relationship with AC that was to the prejudice of good order and discipline in the armed forces, in violation of Article 134, UCMJ. One of the aspects of that illicit romantic relationship was that Appellant would become angry at AC and damage her property, resulting in emotional and financial harm to her. We find it was not "arbitrary, fanciful, clearly unreasonable, or clearly erroneous" for the military judge to conclude AC's description of Appellant taking out his anger at her by damaging her vehicles demonstrated psychological and financial impact "directly relating to or arising from" the fraternization offense of which he was convicted. *See* R.C.M. 1001(c)(2)(B).

Assuming *arguendo* the military judge did abuse her discretion by allowing this portion of the unsworn statement, we find Appellant's material rights were not substantially prejudiced. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a). After considering the four factors articulated in *Campos* and *Hamilton*, we conclude any such error did not substantially influence the adjudged sentence. *See Campos*, 85 M.J. at 314 (quoting *Hamilton*, 78 M.J. at 340, 343). The military judge provided the court members a strong, tailored instruction that they were not to increase Appellant's punishment on account of AC's reference to uncharged conduct, to include considering it for any criminal propensity or additional property damage. Moreover, counsel did not refer to this uncharged conduct during sentencing arguments. Significantly, the court members sentenced Appellant to the minimum term of confinement required by the plea agreement. Given the number, duration, and frequency of Appellant's charged offenses, to include using cocaine numerous times over an extended period, we do not find AC's unsworn references to Appellant damaging her vehicles substantially influenced the members' decision to adjudge the dismissal or the reprimand. Accordingly, we find Appellant is not entitled to relief.

## B. Guilty Plea Providency

### 1. Additional Background

The Specification of the Second Additional Charge alleged, in pertinent part, that Appellant violated Article 109, UCMJ, by "willfully and wrongfully damag[ing] a door by punching said door with his fist and a bottle and two glasses by slamming said bottle and two glasses against a counter with his

hand, the amount of said damage being in the sum of less than $1,000.00, the property of [AC].”

The stipulation of fact described the door, as well as the glasses and bottle, as “personal property.” The stipulation included the following description of Appellant damaging the door:

> During the argument [on the phone with AC], [Appellant] became angry and hit the mud door in [AC’s] home with his fist. This caused a hole in the door. The door was in [AC’s] home and belonged to her. [Appellant] was aware, when he hit his fist against the door, it was likely to cause damage. Damaging the door was the natural result of [Appellant’s] decision to hit his fist against it. [Appellant] paid [AC] approximately $100[.00] for the damage.

A photograph of the damage to the door was attached to the stipulation of fact. The photograph depicts that the hole was in the surface of one side of the door, but did not go all the way through the door.

During the military judge’s guilty plea inquiry, she described the elements of the Article 109, UCMJ, offense as:

> 1) That at or near Anne Arundel, Maryland, on or about – between on or about 1 June 2019 and on or about 30 August 2022, on divers occasions, you willfully and wrongfully damaged certain *personal property*, that is a door, a bottle, and two glasses, by punching the door with your fist and slamming the bottle and two glasses against the counter with your hand;
>
> 2) That the property damaged was the property of [AC];
>
> 3) That the property was a value of a sum less than $1000.00.

(Emphasis added).

During the military judge’s guilty plea inquiry, Appellant described how he damaged AC’s door:

> In my frustration, I hit my fist against the door to her mud room. I had my arm bent at the elbow with my fist parallel to my upper arm, and then used a moderate amount of force to bring my fist down and into the door. Turned out the door was hollow and the impact of my [fist] caused a hole in the door. I didn’t intend to necessarily punch a hole in the door but I was aware that hitting my fist against the door was going to certainly damage it some – the door in some capacity. I was familiar with the door and the

fact that it was not made of the best wood, I knew it would likely impact – the impact of my fist would cause damage to the door.

. . . .

I struck the door and any reasonable person could – would have assumed there would be some damage to the door striking the door the way I did and I knew that.

The military judge accepted Appellant's pleas of guilty. During the court-martial, neither the military judge nor either party raised a question as to whether the door attached to AC's house might be real property rather than personal property.

After completing our review of the record, this court ordered the parties to provide briefs on the following specified issue:

> WHETHER THE DOOR APPELLANT PLEADED GUILTY TO DAMAGING WAS REAL PROPERTY RATHER THAN PER-SONAL PROPERTY; IF SO, WHETHER APPELLANT'S PLEA OF GUILTY TO DAMAGING THE DOOR WAS IMPROVI-DENT BECAUSE THE DOOR CONSTITUTED REAL PROP-ERTY RATHER THAN PERSONAL PROPERTY; AND IF SO, WHAT RELIEF, IF ANY, IS APPROPRIATE?

**2. Law**

We review a military judge's decision to accept an accused's guilty plea for an abuse of discretion. *United States v. Saul*, 86 M.J. 30, 33 (C.A.A.F. 2025) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). In the context of accepting a guilty plea, "[a]n abuse of discretion occurs when there is 'something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the . . . plea.'" *United States v. Riley*, 72 M.J. 115, 119 (C.A.A.F. 2013) (quoting *Inabinette*, 66 M.J. at 322).

"The military judge must ensure there is a basis in law and fact to support the plea to the offense charged." *United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011) (citing *Inabinette*, 66 M.J. at 321–22) (additional citation omitted). The military judge may consider both the stipulation of fact and the inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014).

"[T]he military judge must explain each of the elements of an offense to the accused and question the accused to ensure that the accused's acts or omissions constitute the offense to which the accused is pleading guilty." *Saul*, 86 M.J. at 33 (citing *United States v. Care*, 40 C.M.R. 247, 253 (C.M.A. 1969)). A military judge "has a duty to accurately inform an appellant of the nature of his offense and an essential aspect of informing is a correct definition of legal concepts."

11

*United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015) (internal quotation marks, alterations, omission, and citations omitted).

> [F]ailure to define correctly a legal concept or explain each and every element of the charged offense to the accused in a clear and precise manner is not reversible error if it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty.

*Id.* (internal quotation marks, alteration, and citations omitted).

Article 109, UCMJ, provides, "Any person subject to this chapter who willfully or recklessly wastes, spoils, or otherwise willfully and wrongfully destroys or damages any property other than military property of the United States shall be punished as a court-martial may direct." "Through the Manual, the President has created two offenses within the ambit of Article 109, UCMJ, based on the type of property at issue: the wasting or spoiling of real property and the destroying or damaging of personal property." *United States v. Jeter*, 74 M.J. 772, 775 (A.F. Ct. Crim. App. 2015). These distinct offenses against real property and personal property involve distinct elements.

The elements of "[w]asting or spoiling non-military property" include: (1) "[t]hat the accused willfully or recklessly wasted or spoiled certain real property in a certain manner;" (2) "[t]hat the property was of another person;" and (3) "[t]hat the property was of a certain value." *MCM*, pt. IV, ¶ 45.b.(1). "The terms 'wastes' and 'spoils' as used in this article refer to such wrongful acts of voluntary destruction of or permanent damage to real property as burning down buildings, burning piers, tearing down fences, or cutting down trees. This destruction is punishable whether done willfully . . . or is through a culpable disregard of the foreseeable consequences of some voluntary act." *MCM*, pt. IV, ¶ 45.c.(1).

The elements of "[d]amaging non-military property" include: (1) "[t]hat the accused willfully and wrongfully damaged certain personal property in a certain manner;" (2) "that the property was that of another person;" and (3) "that the damage inflicted on the property was of a certain amount." *MCM*, pt. IV, ¶ 45.b.(2).

**3. Analysis**

The Specification of the Second Additional Charge did not explicitly identify any of the property in question—the door, bottle, or glasses—as either real or personal property. However, by asserting Appellant "wrongfully and willfully damage[d]" the property, the specification implied the elements of damaging personal property, rather than wasting or spoiling real property. *MCM*, pt. IV, ¶ 45.b.(1), (2). In addition, both the stipulation of fact and the military

judge's explanation of the elements of the offense described the property, including the door, as "personal property."

Neither Article 109, UCMJ, nor the Manual provide specific definitions of "real property" or "personal property" in the context of this offense. More generally, "real property" refers to "[l]and, and generally whatever is growing upon or affixed to land." *Property*, BLACK'S LAW DICTIONARY (6th ed.); *see also* MERRIAM-WEBSTER, *Property — real property*, https://www.merriam-webster.com/dictionary/property#legalDictionary (last visited 16 Apr. 2026) (defining "real property" as "property consisting of land, buildings, crops, or other resources still attached to or within the land or improvements or fixtures permanently attached to the land or a structure on it"). "Personal property" generally includes, "[i]n a broad and general sense, everything that is the subject of ownership, not coming under denomination of real estate." *Property*, BLACK'S LAW DICTIONARY (6th ed.); *see also* MERRIAM-WEBSTER, *Property — personal property*, https://www.merriam-webster.com/dictionary/property#legalDictionary (last visited 16 Apr. 2026) (defining "personal property" as "property (as a vehicle) that is movable but not including crops or other resources still attached to land : property other than real property").

We find the door attached to AC's house was part of a building affixed to the land, and constituted real property rather than personal property. *See United States v. McCameron*, No. ACM 40089, 2022 CCA LEXIS 663, at *12–14 (A.F. Ct. Crim. App. 17 Nov. 2022) (unpub. op.) (finding appellant's guilty plea to willfully and wrongfully damaging personal property improvident where the property in question was a wall in a rented house); *United States v. Dentice*, ARMY 20130591, 2014 CCA LEXIS 589, at *4–7 (A. Ct. Crim. App. 15 Aug. 2014) (unpub. op.) (finding appellant's plea of guilty to "damag[ing]" the interior walls of his on-post quarters with a knife improvident where the military judge described the walls as "personal property"). The Government contends "reasonable minds may differ about whether this particular door should be classified as real or personal property." The Government cites this court's unpublished opinion in *United States v. Kennedy*, where a panel of this court affirmed a conviction based on a plea of guilty to willfully and wrongfully damaging the wall of a dormitory room by punching a hole in it. No. ACM S32660, 2021 CCA LEXIS 575, at *8–12 (A.F. Ct. Crim. App. 1 Nov. 2021) (unpub. op.). *Kennedy* did refer to the wall as "personal property" in passing, but did not specifically come to grips with the Manual's distinction between damaging personal property and wasting or spoiling real property under Article 109, UCMJ. We find the specific reasoning of *McCameron* and *Dentice* far more persuasive.[4]

---

[4] Of course, damaging a door that was not attached to a house or other structure might be a different matter.

We further find a substantial basis in law and fact to question the providency of the plea. As described above, the elements of wasting or spoiling real property and damaging personal property are different, both in terms of the required mens rea and the nature of the damage inflicted. Given the nature of the property in question, the damage to the door was incorrectly charged, and the elements of the offense were incorrectly explained to him. Appellant's admission that he intentionally struck the door knowing the door would be damaged as a result would likely satisfy the "willful[ ] or reckless[ ]" mens rea for spoiling or wasting real property. *MCM*, pt. IV, ¶ 45.b.(1). However, spoiling or wasting requires "destruction" or "permanent damage to real property" on the scale of destroying buildings, tearing down fences, or cutting down trees. The stipulation of fact, attached photo, and Appellant's description indicate the extent of the damage in this case was putting a hole in the surface of an interior door. The damage, while perhaps unsightly, does not appear to have impaired the essential functioning of the door. Had Appellant been correctly instructed on the law, he might not have agreed the limited damage he caused the door amounted to wasting or spoiling real property. Even if he had, if the military judge had recognized the distinction between real and personal property, she likely would not have accepted Appellant's plea. Similar to *McCameron* and *Dentice*, we are not confident Appellant understood the nature of the offense with which he was charged and to which pleaded guilty. *McCameron*, unpub. op. at *13; *Dentice*, unpub. op. at *7. Accordingly, we do not affirm the finding of guilty as to the Specification of the Second Additional Charge with respect to damaging the door, and we take corrective action below.

## C. Sentence Severity

### 1. Additional Background

Appellant's plea agreement provided the court members were required to sentence Appellant to at least four months, but no more than nine months, in confinement. The plea agreement did not limit Appellant's sentence in any other way.

During presentencing proceedings, the Government entered a stipulation of fact with numerous attached documents describing Appellant's offenses. In addition, the Government played relevant portions of the military judge's guilty plea inquiry with Appellant for the court members. AC testified as a prosecution witness and also provided oral and written unsworn statements describing how Appellant's fraternization, damaging property, and failure to obey the no-contact order and MPO negatively impacted her. The Defense called Appellant's sister as a character witness, offered 34 character statements on Appellant's behalf, introduced other evidence of his military achievements and education, and provided photos of his career and family. Appellant also provided written and oral unsworn statements.

During sentencing argument, trial counsel recommended the members sentence Appellant to a dismissal and nine months in confinement. Trial defense counsel contended a dismissal was not appropriate, and recommended four to six months of confinement instead. The members sentenced Appellant to a dismissal, four months in confinement, and a reprimand.

**2. Law**

Courts of Criminal Appeals review issues of sentence appropriateness de novo. *United States v. L*ane, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). We are required "to review the appropriateness of each punishment in the adjudged sentence." *United States v. Flores*, 84 M.J. 277, 281 (C.A.A.F. 2024) (citations omitted). Although the CCAs are empowered to "do justice[ ] with reference to some legal standard," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

**3. Analysis**

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant contends his dismissal is inappropriately severe and asks this court to set it aside. Appellant concedes "[t]he seriousness of the offenses to which [he] pleaded guilty is not in dispute," but contends the members "failed to give adequate weight to the overwhelming evidence presented in mitigation and extenuation." He cites, *inter alia*, his 21-year Air Force career, his record of strong duty performance, and the numerous positive character letters from officers, enlisted members, and others, including the former squadron commander who issued the no-contact order and MPO Appellant violated.

Having carefully considered the record, we do not find Appellant's dismissal inappropriately severe for his offenses. Appellant engaged in several offenses over an extended period, displaying a remarkable intentional disregard for the law and his obligation to maintain good order and discipline. Appellant might have been a technically proficient pilot and personally well-liked, but his dismissal is appropriate in light of the scope of his misconduct, including his extensive drug abuse, flagrantly inappropriate relationship with AC, and other crimes.

**D. Appellate Delay**

Appellant's record was docketed with this court on 30 September 2024. Appellant requested and received 13 enlargements of time, over the Government's objection, before filing his assignments of error on 29 December 2025. The Government timely filed its answer brief on 26 January 2026. Appellant filed a reply brief on 4 March 2026 after receiving an additional enlargement of time.

On 11 March 2026, this court specified issue (5), ordering the parties to file briefs not later than 25 March 2026. The Government filed its specified issue brief on 25 March 2026. Appellant filed his specified issue brief on 30 March 2026, after receiving a further enlargement of time.

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). In *Moreno*, the CAAF established a presumption of facially unreasonable delay where, *inter alia*, "appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the [CCA]." 63 M.J. at 142. Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Id.* at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of the right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety or concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We review de novo an appellant's entitlement to relief for post-trial delay. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *Moreno*, 63 M.J. at 135).

Over 18 months have elapsed since Appellant's record of trial was docketed with this court. Therefore, under *Moreno* there is a facially unreasonable delay, although we note the 18-month threshold has been exceeded by less than one month. Accordingly, we have considered the *Barker* factors and find no due process violation. Appellant has not specifically alleged cognizable prejudice from appellate delay, and we do not find any. Absent prejudice, we find the post-docketing delay involved in Appellant's case has not been so egregious as to adversely affect the perception of the military justice system. The delay is primarily attributable to numerous defense requests for enlargements of time in which to file their briefs. In addition, we note the record is quite large,

including 18 volumes and a transcript of nearly 1,500 pages. We find no egregious delay and no violation of Appellant's due process rights. *See Toohey*, 63 M.J. at 362.

Recognizing our authority under Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2), we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Valentin-Andino*, 85 M.J. 361, 366 n.4 (C.A.A.F. 2025). We find no such relief is warranted.

## E. Sentence Reassessment

Having modified the findings of guilty as to the Specification of the Second Additional Charge, specifically with respect to damaging a door in AC's residence, we have considered whether we can reliably reassess Appellant's sentence in light of the non-exclusive factors identified in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). We find that we can. The penalty landscape has not dramatically changed; the remaining offenses capture the gravamen of the criminal misconduct; and the remaining offenses are of a type the judges on this court are familiar with. *See id*. The fact that Appellant was sentenced by court members rather than a military judge weighs in favor of resentencing, but only slightly in this case. Significantly, the court members sentenced Appellant to four months of confinement, the minimum term permitted by the plea agreement. We also note the parties stipulated Appellant paid AC to repair the damage to the door. We are confident that without the conviction for damaging AC's door, the court members would have sentenced Appellant to the same punishment for the remaining offenses.[5] Accordingly, we reassess Appellant's sentence to the same sentence originally adjudged by the court members.

## III. CONCLUSION

The findings of guilty as to the Specification of the Second Additional Charge are affirmed, excepting the words "a door by punching said door with his fist and." The findings of guilty as to the excepted words are **SET ASIDE**, and the excepted words are **DISMISSED**. We reassess the sentence to a dismissal, confinement for four months, and a reprimand. The findings, as entered and modified, and the sentence, as entered and reassessed, are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

---

[5] We note the language of the adjudged reprimand does not refer to the damaged door.

Accordingly, the findings, as modified, and sentence, as reassessed, are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court